FORSYTH v. CITY OF HAMMOND et al.`

(Circuit Court of Appeals, Seventh Circuit.   January 16, 1896.)

**1. CONSTITUTIONAL LAW — LEGISLATIVE AND JUDICIAL FUNCTIONS — ANNEXING TERRITORY TO CITY—INDIANA STATUTE.**
The statutes of Indiana provide (Rev. St. 1894, §§ 3659, 3660) that "if any city shall decide to annex contiguous territory, not laid off in lots, and * * * the owner will not consent, the common council shall present to the board of county commissioners a petition, setting forth the reasons for such annexation. * * * The board of county commissioners * * * shall consider the same, and shall hear the testimony; * * * and, if * * * such board is of the opinion that the prayer of the petition should be granted, it shall cause an entry to be made in the order book" by which the annexation is effected. Such statutes also provide (section 4224) for an appeal by either party to the circuit court from the determination of the county commissioners. The constitution of Indiana provides (article 3) that the powers of the government are divided into legislative, executive, and judicial departments, and no person under either shall exercise the functions of another. *Held,* that the determination, under such statutes, by boards of county commissioners, of the question of annexation of territory to a city, involving the exercise of legislative discretion, which is committed to the board of county commissioners, is a legislative function, which cannot be performed by the courts; and hence that the provisions of the statute giving a right of appeal to the courts from such determination are unconstitutional and void.

**2. STATE AND FEDERAL COURTS — FOLLOWING STATE DECISIONS—SAME TRANSACTION.**
*Held,* further, that this court is not bound to yield its own opinion to a contrary decision of the state court of last resort, rendered, upon the same transaction, after the argument and before the decision of the case before this court; such decision appearing to be in plain conflict with the weight of authority on the subject, and distinctly inconsistent with the previous decisions of the state court, and the question presented appearing to this court not to be balanced with doubt, but clearly to require a decision contrary to that of the state court.

Appeal from the Circuit Court of the United States for the District of Indiana.

The bill in this case was brought by Caroline M. Forsyth, a citizen of Illinois, against the city of Hammond, Ind., and William Kleihege, treasurer of that city, to enjoin the collection of taxes levied upon lands of the complainant for the use of the city, and, after hearing and denial of a motion for an injunction pendente lite, was dismissed for want of equity. Forsyth v. City of Hammond, 68 Fed. 774.

The substance of the bill is: That the complainant is the owner of lands described, in Lake county, Ind., to the number proximately of 650 acres; that by certain proceedings commenced before the board of commissioners of that county in June, 1893, and carried by appeal to the Lake circuit court, and thence, by change of venue, to the Porter circuit court, the city of Hammond pretended to have annexed, and now claims jurisdiction over, and the right to assess for taxation, and for the year 1894 has levied taxes on the lands and personal property thereon to the amount of $3,500, which the treasurer is proceeding and threatening to collect; that the land is used solely for pasturage and other agricultural purposes, has a rental value not exceeding one dollar per acre, has no market value, but only a prospective and speculative value, dependent upon the location, yet unsecured, of manufacturing establishments there, whose market and offices are in Chicago, and is in no degree helped by the neighborhood of Hammond, and, by taxation there, will be rendered unsalable and of little value; that no part of the land has been platted with a view to sale, and no such step is contem-

plated; that there are but 21 dwelling houses on the land, 10 of them being in a row together near Whiting, a town of rapid growth, containing 2,500 or 3,000 inhabitants, at which the tenants of the 10 houses do business or work; that the other houses on the land are in wide apart clusters of 2 or 3; that the houses on the land are 4½ miles distant from any police station, fire engine house, or gas lamp of Hammond, so that, in the nature of things, the complainant cannot receive any benefit from the government of that city; that the lands were valued for taxation by the city of Hammond at the rate of $250 to $500 per acre, making the taxes about $5 per acre, which is excessive, oppressive, and extortionate; that, at the time of the attempted annexation, Hammond contained, and still contains, not more than 7,000 inhabitants, and had territory about three miles long north and south, and two miles wide, extending on the west to the state line, adjoining which line is the most populous portion of the city, beginning about one-fourth of the way from the north line, and extending to the southern boundary, the northern frontier of the city consisting of about two square miles of land, no part of which has been laid off into lots or blocks, and upon which there were but seven houses and one road when the attempt was made to annex complainant's lands, which lie beyond and northward of the two square miles mentioned; that the part of Hammond laid off in lots is much larger than is now or is likely to be required for city purposes for many years to come; that (upon information) the city has a bonded debt of $100,000, and a floating debt of $60,000, and taxable property in the city proper of little more than $400,000; that the territory attempted to be annexed contains about five square miles of practically vacant lands, extending from the northern limit of Hammond to the shore of Lake Michigan; that immediately on the north, and overlapping the limit of the city, are two lakes (Wolf Lake and Lake George), shallow and of marshy shores, between which is a narrow neck of low swampy land about a mile long, over which, by a low and muddy road, is the only direct route from Hammond to the property of value sought to be annexed, the most populous and most valuable portion of which lies in the northern part of the tract, near the trunk lines of railroad along the shore of Lake Michigan, and near Chicago, and from four to five miles distant from the business portion of Hammond; that, before the attempted annexation, 20 acres in the northeast corner of the land had been laid out in town lots, and platted by Agnes Roberts with reference to the adjoining town of Whiting, and without reference to Hammond, which is between four and five miles away, and two tracts, aggregating 35 acres, in the northwest part, had been laid off and platted by Edward Roby and Edward A. Shedd, with reference to South Chicago, and denominated Roby & Shedd's Addition to Chicago in Indiana; that, except the parts so platted, the lands sought to be annexed consist in part of sand ridges and sloughs, and are used for pasturage and agricultural purposes solely, being sparsely and thinly inhabited, the dwelling houses and buildings thereon, except the small portion in the northeast corner, being widely separated from one another; that the inhabitants have no need of municipal government, and, from the nature of the situation, can possibly derive no benefit from being included within the corporate boundaries, and burdened with the taxation of Hammond; that the lands have not been enhanced in value by reason of proximity to Hammond, and would be greatly impaired in value if brought within its limits, the sale thereof being greatly hindered, if not made impossible, by reason of the heavy and excessive taxes imposed; that this attempted extraordinary and unreasonable enlargement of the boundaries of the city was not needed for roads, streets, alleys, or for any legitimate purpose, but was an abuse and violation of the franchise of the city, and a contemplated fraud upon the law of the state granting to cities the right to make reasonable annexations; that this attempt was dictated above all by covetousness and greed and a corrupt desire on the part of the authorities of the city to subject the lands of complainant and others in the new territory to the burdens of taxation for the sole benefit of the city, to raise means to pay off its heavy indebtedness, relieving the inhabitants of the city proper, without rendering any service or benefit to the new subjects of taxation; that the debt of the city was and is about 4 per cent. of

the valuation of its taxable property, or twice the amount limited by the constitution of the state, and the purpose was by annexing new territory at an exaggerated valuation to lift the city out of its constitutional dilemma, without regard to the question of benefits or advantages to the property annexed; that the city is not only thus attempting to levy and collect taxes on said lands for municipal purposes, but is about to commingle the moneys so collected with other funds of the city, and to use the same in payment of its debts in excess of the constitutional limit and in the payment of ordinary municipal expenses, but no part of the city's funds has been or is to be expended for the benefit of complainant's property, which is completely without lights, water, police, and fire protection, as before the pretended annexation was had.

It is further averred that, in the proceedings recited, the board of commissioners of Lake county refused to order the annexation prayed for, whereupon the city of Hammond undertook to appeal to the Lake circuit court, whence there was a pretended change of venue to the Porter circuit court, which, upon the verdict of a jury, gave judgment in favor of the annexation; that the appeal and the change of venue were, as the complainant is advised, without authority, and the proceedings thereon void, for that the annexation of territory to a city is a matter of legislative, and not of judicial, cognizance, which it is not competent for the legislature to commit to the determination of courts and juries; that, when the proceedings for annexation were begun, a strip of land lying between the territory to be added and the northern boundary of Hammond, about a quarter of a mile wide, and extending from the western boundary of the city of East Chicago westward to the state line, had been, with the consent of the owners thereof, annexed to, and was then wholly under the jurisdiction, control, and government of, the last-mentioned city, thus separating and cutting off all contiguity of the boundaries of Hammond and the territory proposed to be annexed. Prayer, among other things, that the annexation be declared void, and that the city of Hammond be enjoined from collecting taxes or otherwise asserting jurisdiction over the complainant's lands.

The proceedings for annexation were had under the following provisions of the act of March 14, 1867, touching the incorporation and powers of cities, the numbers given of the sections referring to Burns' Revised Statutes of Indiana of 1894, and to the Revision of 1881, respectively: Section 3659 (3196): "* * * If any city shall desire to annex contiguous territory not laid off in lots, and to the annexation of which the owner will not consent, the common council shall present to the board of county commissioners a petition setting forth the reasons for such annexation, and at the same time present to such board an accurate description by metes and bounds, accompanied with a plat of the lands or territory proposed or desired to be annexed to such city. The common council shall give thirty days' notice, by publication in some newspaper of the city of the intended petition, describing in such notice the territory sought to be annexed." Section 3660 (3197): "The board of county commissioners, upon the reception of such petition, shall consider the same, and shall hear the testimony offered for or against such annexation, and if after inspection of the map and of the proceedings had in the case such board is of the opinion that the prayer of the petition should be granted, it shall cause an entry to be made in the order book specifying the territory annexed, with the boundaries of the same, according to the survey, and they shall cause an attested copy of the entry to be filed with the recorder of such county, which shall be duly recorded in his office, and which shall be conclusive evidence of such annexation in all courts of this state."

A right of appeal in such proceedings was given by the act of May 31, 1879, from which we quote the portions pertinent here: Section 4224 (3243): "In proceedings before the board of county commissioners for the annexation of territory to cities and towns against the will of the owner, the petitioner and the owner of any portion of the territory proposed to be annexed, may appeal to the circuit court by filing within thirty days with the auditor, a bond," etc. Section 4226 (3245): "* * * The appeal shall be tried and determined as an original cause." Section 4227 (3246): "* * * The court may make a final determination of the proceeding and compel its ex-

ecution or may send its decision to the board with directions how to proceed, and require compliance."

The constitution of Indiana contains the following provisions: Article 3: "The powers of the government are divided into three separate departments; the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided." Article 4, § 23: "In all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state." Article 11, § 13: "Corporations, other than banking, shall not be created by special act, but may be formed under general laws." This provision has been held to apply to municipal corporations. Wiley v. Bluffton, 111 Ind. 155, 12 N. E. 165. Schedule, cl. 4: "All acts of incorporation for municipal purposes shall continue in force under this constitution until such time as the general assembly shall, in its discretion, modify or repeal the same."

W. H. H. Miller, Thomas Merrifield, and Lyman Trumbull, for appellant.

Peter Crumpacker, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The authorities cited in support of the proposition that the power to establish municipal corporations, and to enlarge or contract their boundaries, is legislative, are numerous and conclusive: Dill. Mun. Corp. § 9; 1 Beach, Pub. Corp. § 80; Cooley, Const. Lim. (4th Ed.) 232; Stone v. Charlestown, 114 Mass. 220; People v. Bennett, 29 Mich. 451; Galesburg v. Hawkinson, 75 Ill. 152; People v. Town of Nevada, 6 Cal. 143; Stilz v. Indianapolis, 55 Ind. 515; Coffin v. State, 7 Ind. 157; Sloan v. State, 8 Blackf. 361; Laramie Co. v. Albany Co., 92 U. S. 310; Meriwether v. Garrett, 102 U. S. 472. And, being a legislative power, the rule in Indiana, as in other states, is that it cannot be conferred upon or exercised by a court whose functions are judicial. Wright v. Defrees, 8 Ind. 298; Shoultz v. McPheeters, 79 Ind. 373; State v. Noble, 118 Ind. 350, 21 N. E. 244; State v. Denny, 118 Ind. 382, 21 N. E. 252; Hovey v. State, 127 Ind. 588, 27 N. E. 175; State v. Kolsem, 130 Ind. 442, 29 N. E. 595; State v. Haworth, 122 Ind. 462, 23 N. E. 946; Hancock v. Yaden, 121 Ind. 366, 23 N. E. 253; Greenough v. Greenough, 11 Pa. St. 489; Legal Tender Cases, 12 Wall. 457.

It is contended, nevertheless, that since the decision in Grusenmeyer v. City of Logansport, 76 Ind. 549, the right of appeal from the board of county commissioners in such cases, under the Indiana statutes on the subject, has been regarded as established. That case, however, does not so decide, nor contain anything to justify an inference to that effect; and in only one of the many cases since decided in which reference was made to that decision has it been so interpreted. It has been cited frequently as authority for the proposition that, under the general statute which authorizes appeals from decisions of county boards, there is a right of appeal from any decision of a judicial character, made in any proceeding by a board of

commissioners. Bryan v. Moore, 81 Ind. 9; Board v. Pressley, Id. 361; La Plante v. Lee, 83 Ind. 155; City of Indianapolis v. McAvoy, 86 Ind. 587; Miller v. Embree, 88 Ind. 133; Board of Com'rs of Cass Co. v. Logansport, etc., Road Co., Id. 199; Board v. Karp, 90 Ind. 236; Padgett v. State, 93 Ind. 396; City of Terre Haute v. Beach, 96 Ind. 143; City of Logansport v. La Rose, 99 Ind. 117; Strosser v. Ft. Wayne, 100 Ind. 447; Waller v. Wood, 101 Ind. 138; Platter v. Board, 103 Ind. 360, 2 N. E. 544; Bunnell v. Board, 124 Ind. 1, 24 N. E. 370; Farley v. Board, 126 Ind. 469, 26 N. E. 174; Improvement Co. v. Wagner, 134 Ind. 698, 34 N. E. 535. In none of these cases was there an appeal, or any question touching the right of appeal, from an order extending or affecting the limits of a city. In the last case the appeal was from an order of a board of commissioners, made in a proceeding to incorporate a town, that an election be held by the inhabitants of the territory to determine whether they would incorporate. The order was held to be not final, and therefore not appealable, but in the course of the opinion it is said:

"There was formerly some conflict in our decisions as to whether an appeal would lie from an order of a board of county commissioners incorporating, or refusing to incorporate, a town. But in the case of Grusenmeyer v. City of Logansport, 76 Ind. 549, that question was set at rest, and it is no longer a matter of doubt that such appeal does lie."

Grusenmeyer and others, according to the report of the case, presented a petition for the incorporation of the town of Taberville; but, it being asserted that the territory had already been annexed to the city of Logansport, the board of commissioners rejected the petition. The petitioners took an appeal to the circuit court, where a motion was made, and sustained, to dismiss the appeal; and from that order an appeal was prosecuted to the supreme court, where counsel for the appellee, the city, advanced the following propositions:

"(1) That the right of appeal is purely statutory; that the incorporation of towns is a special proceeding, under a statute which does not provide for an appeal; and that, under the doctrine of Allen v. Hostetter, 16 Ind. 15, no appeal is permissible. (2) That by section 10, art. 6, of the constitution, 'the general assembly may confer upon the boards doing county business in the several counties powers of a local administrative character'; and that the power to incorporate towns is such a power, to be exercised by the board in its legislative discretion; and that from the exercise of such a power there can be no appeal. (3) That there can be no appeal, because the circuit court cannot 'make a final determination of the proceedings thus appealed, and cause the same to be executed'; that the circuit court cannot give the notice, receive the returns, nor declare the result of the election; that it is not a question before the court, or with which it has anything to do; it is a legislative act; and the court, having no power to move in the premises, cannot compel the board to do it."

The authorities touching the first proposition are reviewed at length, but the others are disposed of briefly at the end of the opinion, where it is said:

"We therefore hold that, under section 31 of the general law, there is a right of appeal from any decision of a judicial character, made by a county board in any proceeding, unless the right is denied expressly or by necessary implication, and such implication does not arise from the fact that the judgment is declared to be conclusive. It can hardly be necessary to add that nothing is herein said or decided which can be construed to imply a

right of appeal from the decisions of the boards upon matters of discretion. The second proposition of the appellant is disposed of by Taylor v. City of Ft. Wayne, 47 Ind. 274. The board has no discretion to grant or refuse the application, if the proper preliminary steps have been taken by the petitioners. The decision of the board in such a case is judicial, and not merely administrative or legislative. In answer to the third proposition, it is enough to say that the circuit court, under its general powers, and under the 37th section of the act of June 17, 1852, before referred to, has ample power to dispose of the case on appeal."

In Taylor v. City of Ft. Wayne, as in the cases of Grusenmeyer v. Logansport and Improvement Co. v. Wagner, the proceeding was under the act of June 11, 1852 (sections 4314 [3293], 4322 [3301], Revisions of 1894 and 1881), to incorporate a town. By the provisions of that act, the board of commissioners are given no discretion, except such as any court has in respect to the weight and sufficiency of evidence adduced, but, upon satisfactory proof of certain facts which must be set out in the petition, are required to order an election "to determine whether such territory shall be an incorporated town," and upon the return of the vote, if favorable to incorporation, to "make an order declaring that said town has been incorporated"; and, after setting out the provisions of the statute, the court said:

"The statute conferred power and authority upon the board of county commissioners to hear and determine the application of the appellants, and whether the requirements of the act under which the application was made had been fully complied with. The board had acquired jurisdiction. It was their duty to proceed with the consideration of the cause, and, if the evidence was sufficient to satisfy them that the requirements of the law had been complied with, to make the proper order, provided for in section 5. The appellants were entitled to the order that the meeting and vote provided for in the statute might be had; and, if in favor of the proposition, they were also entitled to the order provided for in section 9, after which the territory would be an incorporated town, by the name adopted."

It was in interpretation and reaffirmance of this construction of the statute that it was said in the Grusenmeyer Case that "the board has no discretion to grant or refuse the application, if the preliminary steps have been taken by the petitioners"; that "the decision of the board in such a case is judicial, and not merely administrative or legislative"; and hence that there was a right of appeal. "Such a case," however, is not the one before us, which arose under a radically different statute, whereby it is left to the discretion of the board, according to its own opinion, to grant or refuse the proposed annexation. Such discretion is of the essence of a legislative power. In the proceeding under the act of 1852, for the incorporation of towns, all discretion is left to the voters of the district which it is proposed to incorporate, while the powers given to the boards of commissioners are to hear proofs, determine facts, declare their conclusion, and make the proper order. Such powers are essentially judicial, and from decisions made in the exercise of them, though incidental to a legislative end or proceeding, it was competent for the legislature to allow an appeal. That much the cases which we have been comparing mean, but they do not mean that appeals may be prosecuted from decisions upon

matters of discretion, whether legislative or judicial, unless, it may be, in cases of gross abuse of judicial discretion. On the contrary, by the Grusenmeyer Case, and by many other decisions in Indiana and elsewhere, the right of appeal from discretionary orders is denied. Hanna v. Board, 29 Ind. 170; Moffit v. State, 40 Ind. 220; City of Ft. Wayne v. Cody, 43 Ind. 200; Alexander v. Road Co., 44 Ind. 436; Catterlin v. City of Frankfort, 87 Ind. 45; Hunt v. State, 93 Ind. 311; Waller v. Wood, 101 Ind. 139; Platter v. Board, 103 Ind. 360, 374, 2 N. E. 544; Farley v. Board, 126 Ind. 468, 26 N. E. 174; Bunnell v. Board, 124 Ind. 1, 24 N. E. 370; State v. Board of Com'rs of Tippecanoe Co., 131 Ind. 90, 30 N. E. 892; Motz v. City of Detroit, 18 Mich. 495; Owners of Ground v. Mayor, etc., of Albany, 15 Wend. 374; Com. v. Woods, 44 Pa. St. 113; Foster v. Neilson, 2 Pet. 253; Jones v. U. S., 137 U. S. 202, 11 Sup. Ct. 80; In re Cooper, 143 U. S. 472, 12 Sup. Ct. 453.

By the act of May 31, 1879, a right of appeal to the circuit court "in proceedings before the boards of county commissioners for the annexation of territory to cities and towns against the will of the owner" was expressly given both to the petitioner and to the owner of any portion of the territory proposed to be annexed; but manifestly it was not intended thereby to take away or modify the discretion with which the act of 1867, § 3660, supra, clothes the board, nor to give an appeal from any decision of the board in so far as in the particular instance it was discretionary. But in so far as the board, in any such case, determines questions of fact which are essential either to the jurisdiction of the board in the proceeding or to the right of annexation, as, for instance, the fact and sufficiency of notice, contiguity and ownership of lands, or whether the lands had been platted, its action is of a judicial character, and may properly be made subject to review on appeal; that is to say, if the board should order an annexation of territory which was not contiguous, or of contiguous territory without proper notice of the proceeding having been published, an aggrieved owner of land might appeal; or, on the other hand, if, upon proper petition and notice, the board should order the annexation of only a part of the land sought to be annexed, or should deny the petition in toto, putting its decision expressly and solely upon the ground that the territory was not contiguous, or that the names of the true owners of the land were not given, or that the notice was insufficient, or that the lands had been platted by the owner before the proceedings were commenced, the appeal, doubtless, might be prosecuted by the petitioner. But in respect to the reasons for annexation, in so far, at least, as they should be designed, and be of a nature, only to affect the opinion of the board in respect to the propriety or policy of the proposed annexation, the statute cannot reasonably be said to have been intended to give an appeal, and, if so intended, it was to that extent ineffectual, as an attempt to give the courts a legislative power. See Commissioners v. Griffin, 134 Ill. 330, 341, 25 N. E. 995. In disposing of any such appeal, the circuit court, it would seem clear, must confine itself to questions

of a judicial character, and, according to the circumstances, enter a final order, or send the case back to the board of commissioners, but in no case may order annexation unless the record shows that in the opinion of the board, if the proceedings were regular, the prayer of the petition ought to be granted.

But at this point we are confronted with the decision of the supreme court of Indiana, affirming the judgment of the Porter circuit court, whereby the annexation was ordered, which we are asked to treat as null and void. In the original opinion, which was delivered prior to the hearing before us, the question of the jurisdiction of the courts over the subject-matter was not mentioned (40 N. E. 267); but, in the opinion upon a petition for a rehearing (41 N. E. 950), the court says:

"One of the positions taken by counsel in support of their petition for a rehearing of this case is that the circuit court had no jurisdiction of the appeal from the board of county commissioners, for the reason that the annexation of territory to a city is a legislative, and not a judicial, function; and, as such, in case of unplatted lands, the board of county commissioners is given sole and final jurisdiction in the premises. The proposition so advanced was not urged in the original argument, nor on the trial of the cause, and is now brought to our attention for the first time; but as it is a question that affects the jurisdiction of the trial court, and also of this court, it is one that will be entertained at any time. It may be conceded that annexation of territory to a city is a legislative function. This function is exercised by the common council when it resolves to annex certain described lands to the city, and to present a petition therefor to the county board. It must be admitted, however, as we think, that the after proceedings had upon the petition are of a judicial nature. The petition must give the reasons why, in the opinion of the council, the annexation should take place. The sufficiency of such reasons, and whether they in fact exist, calls for the decision of the tribunal appointed to hear the petition. Notice of the presentation of the petition is also provided for, and adverse parties are thus brought in. Whether the proper preliminary steps have been taken, whether the reasons given in the petition are true and are sufficient, seem to be questions calling for a judicial examination and decision. In a similar case (Grusenmeyer v. City of Logansport, 76 Ind. 549) it was said by Woods, J., speaking for this court, that 'the decision of the board in such a case is judicial, and not merely administrative or legislative.' But if the board, in considering and deciding upon the petition, acts in a judicial capacity, certainly the legislature may, as it has done in this case, provide for an appeal to the courts, to determine whether the city council and the county board have complied with the statutory requirements in the action taken. It is the law itself, as has been said, that fixes the conditions of annexation; and the office of the board and of the court is to determine whether the conditions so prescribed by the law have been complied with. The legislature has expressly provided for such judicial determination by the board, and for an appeal therefrom to the courts, and this court has frequently recognized the right to such appeal. Rev. St. 1894, § 4224 (Rev. St. 1881, § 3243); Catterlin v. City of Frankfort, 87 Ind. 45; Chandler v. City of Kokomo, 137 Ind. 295, 36 N. E. 847; Wilcox v. City of Tipton (at this term) 42 N. E. 614. See, also, Manufacturing Co. v. Emery (at this term) 41 N. E. 814; City of Wahoo v. Dickinson, 23 Neb. 426, 36 N. W. 813."

That the Grusenmeyer Case is not similar, but radically different, has already been explained; and, while the other cases referred to recognize the right of appeal in proceedings for annexation, they do not countenance appeals in respect to matters of discretion. On the contrary, in Catterlin v. City of Frankfort the disputed

questions were of a judicial character, and, in the course of the opinion, it is said that, the statute not having prescribed what reasons for the proposed annexation shall be set forth in the petition, "their sufficiency is necessarily left to the sound discretion of the authority passing upon the petition"; that is to say, to the board of commissioners.

This expression of the Catterlin Case is quoted and reaffirmed in the later cases cited. In Chandler v. City of Kokomo, after quoting it, the court adds:

"If, as indicated, the sufficiency of the reasons is a question within the sound discretion of the authority to which they are addressed, we could not review the exercise of that discretion, unless, possibly, we should find that it had been palpably abused."

And, to the same point, in Manufacturing Co. v. Emery it is said:

"If we could review the exercise of discretion as to the sufficiency of the reasons stated for annexation when it had been palpably abused,—a question we do not decide,—we would be compelled to adjudge that there was no such abuse in this case."

It is evident that in these utterances it was assumed that the discretion referred to was a judicial discretion, and, if that were so, there might, doubtless, be a review in cases of palpable abuse; but, once it is conceded to be a legislative discretion, its exercise by the power which possesses it can be reconsidered or revoked, as we suppose, only by the same or a higher legislative power. The cases cited, except, perhaps, that from Nebraska, decide nothing to the contrary.

It being conceded that the annexation of territory to a city is a legislative function, the proposition that under the statute "this function is exercised by the common council, when it resolves to annex certain described lands to the city, and to present a petition therefor to the county board," is, we think, untenable. Legislative power over a subject, though delegated to a subordinate agency, must, in the nature of things, be dominating; and, if it be regularly exercised, the result must be as conclusive as if accomplished by direct legislative enactment. If it be subject to any other power, it is not legislative. In cases of the annexation of unplatted lands against the will of the owner, the common council does not "resolve to annex." It has power, and can lawfully resolve, simply to petition for the annexation of territory of defined limits, and only in respect to the limits of the territory has it a discretion which is final or conclusive. A board of commissioners in Indiana cannot order the annexation of less or more or different territory than that described in the petition (City of Peru v. Bearss, 55 Ind. 576); but the final power to determine whether the annexation asked shall be ordered is given to the county board, and is made wholly discretionary. The vital distinction seems to have been overlooked that this statute does not in all particulars "fix the conditions of annexation," and it is not the office of the board simply to determine "whether the conditions so prescribed by the law have been complied with." The proceedings may be in all respects regular, and the board may find that the reasons

for annexation set forth in the petition are true as stated, and yet may disregard them, and either refuse or grant annexation upon considerations not mentioned in the petition. Without a petition nothing can be done, but, once a petition has been presented, the board acquires control of the subject-matter, and, upon proper notice, may order the annexation, "if, after inspection of the map and of the proceedings had in the case, such board is of opinion that the prayer of the petition should be granted"; that is to say, the board is given unqualified discretion in respect to final action upon a subject which is confessedly legislative. It is therefore necessarily a legislative discretion, over which, consistently with the constitutional distribution of powers, the courts could not be given and cannot assume control. Platted lands contiguous to a city may be annexed simply by resolution of the common council, and unplatted lands, with the consent of the owner, may be so annexed. For such cases it may be true, in a sense, that the legislative function and discretion are bestowed on the common council, or on the council and owner of the land together, though it may be more accurate to say, in respect to that class of cases, as the court below said more generally, that there is no delegation of legislative power; the platting of the land, or the consent of the owner, and the annexing resolution of the common council being merely the antecedent facts upon which the statute ex proprio vigore effects the annexation. It is immaterial here, except for the purposes of comparison or contrast, which of these views is the correct one. Let it be conceded that in such a case the legislative function is exercised by the common council when it resolves to annex. Such an act bears a legislative aspect, because it is discretionary and conclusive in respect to a legislative subject.

It was in accord with this view that the court in Chandler v. City of Kokomo, supra, declared that "the only feature in which the jurisdiction of the common council and that of the board of commissioners were distinguished was in the one fact as to whether the lands to be annexed were platted or not," and then added: "This fact was clearly a jurisdictional fact, and it was, as such, not only necessary to be alleged, but also to be proven." That is to say, if the jurisdiction of one is legislative, so is that of the other; the common council being empowered to annex platted lands, or unplatted lands with the owner's consent, and the board being authorized to act only in respect to unplatted lands.

In the case of City of Delphi v. Startzman, 104 Ind. 343, 3 N. E. 937, the court says:

"Our decisions have uniformly declared that in such a case as this [that is, where the territory is not platted] the city must petition the board of county commissioners, and secure an order from that body. * * * This case does not belong to the class over which the common council has jurisdiction. On the contrary it belongs to a class over which the board of commissioners has exclusive, original jurisdiction."

In the same opinion is found the following statement, which treats the subject as political or legislative:

"The question is not simply one of relief from taxation, but the question is as to the right to compulsorily change the property of the citizens from the

territorial limits of one political corporation into those of another and different corporation. It is, in fact, a question as to the right to supplant one local government by another."

In Stilz v. Indianapolis, supra, it was explicitly held that the statute which we are considering "should be closely construed, because it is a delegation of legislative power." But, if thereby the boards have legislative power, it must consist in the discretion given them to grant or refuse a petition for annexation. No other power is given which can be called "legislative," unless the dictionaries and adjudications alike are to be disregarded.

The hearing upon this appeal had been had before the decision upon the petition for a rehearing in the state court was rendered, and, before we had knowledge of it, we had in consultation agreed upon the opposite view. That decision (in which, for the first time, the court has recognized the right of appeal to the circuit court from a decision of a county board refusing to order an annexation of territory to a city), it is clear, was the result largely of a misapprehension of the Grusenmeyer Case, and in part of the decision below in this case, which itself is due partly to the same misapprehension, and partly to the supposed effect of the constitutional inhibition against special legislation,—a matter which we do not regard as of controlling significance. Under the circumstances, are we required to yield our judgment to the authority of that ruling? We think it indisputable that the creation of municipal corporations, including the changing of municipal boundaries, like the law of real estate, is a local subject, in respect to which the federal courts follow the established local rules. "The well-settled rule in this court," said the supreme court in Luther v. Borden, 7 How. 40, "is that the courts of the United States adopt and follow the decisions of the state courts in questions which concern merely the constitution and laws of the state." See, also, Bucher v. Railroad Co., 125 U. S. 582, 8 Sup. Ct. 974. The subject was more fully considered in Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, where, in respect to the liability of stockholders under a statute of Missouri, the supreme court of that state had passed upon the questions involved in the case, "and [as here] on the very transaction" which the federal supreme court was considering, and the latter court, with an avowed purpose to obviate misapprehension of expressions used in earlier decisions, said:

"We do not consider ourselves bound to follow the decision of the state court in this case. When the transactions in controversy occurred, and when the case was under the consideration of the circuit court, no construction of the statute had been given by the state tribunals contrary to that given by the circuit court. The federal courts have an independent jurisdiction in the administration of state laws, co-ordinate with, and not subordinate to, that of the state courts, and are bound to exercise their own judgment as to the meaning and effect of those laws. The existence of two co-ordinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient but for the exercise of mutual respect and deference. Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that, by the course of their decisions, certain rules are established which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law

of real estate and the construction of state constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative decisions of what the law is. But where the law has not been thus settled, it is the right and duty of the federal courts to exercise their own judgment, as they also always do in reference to the doctrines of commercial law and general jurisprudence. So when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or where there has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued. But even in such cases, for the sake of harmony, and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts if the question seemed to them balanced with doubt. Acting on these principles, founded, as they are, on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with the well-considered decisions of the state courts. As, however, the very object of giving to the national courts jurisdiction to administer the laws of the states in controversies between citizens of different states was to institute independent tribunals which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication. As this matter has received our special consideration, we have endeavored thus briefly to state our views with distinctness, in order to obviate any misapprehensions that may arise from language and expressions used in previous decisions. The principal cases bearing upon the subject are referred to in the note, but it is not deemed necessary to discuss them in detail. In the present case, as already observed, when the transactions in question took place, and when the decision of the circuit court was rendered, not only was there no settled construction of the statute on the point under consideration, but the Missouri cases referred to arose upon the identical transactions which the circuit court was called upon, and which we are now called upon, to consider. It can hardly be contended that the federal court was to wait for the state courts to decide the merits of the controversy, and then simply register their decision, or that the judgment of the circuit court should be reversed merely because the state court has since adopted a different view. If we could see fair and reasonable ground to acquiesce in that view, we should gladly do so; but, in the exercise of that independent judgment which it is our duty to apply to the case, we are forced to a different conclusion. Pease v. Peck, 18 How. 595, and Morgan v. Curtenius, 20 How. 1, in which the opinions of the court were delivered by Mr. Justice Grier, are precisely in point."

In Pease v. Peck the court said:

"There are, it is true, many dicta to be found in our decisions averring that the courts of the United States are bound to follow the decisions of the state courts on the construction of their own laws. But although this may be a correct, yet a rather strong, expression of a general rule, it cannot be received as the enunciation of a maxim of universal application. Accordingly, our reports furnish many cases of exceptions to it. In all cases where there is a settled construction of the laws of a state, by its highest judicature, established by admitted precedent, it is the practice of the courts of the United States to receive and adopt it without criticism or further inquiry. But, when this court have first decided a question arising under state laws, we do not feel bound to surrender our convictions on account of a contrary subsequent decision of a state court, as in the case of Rowan v. Runnels, 5 How. 139. When the decisions of a state court are not consistent, we do not feel bound to follow the last, if it is contrary to our own convictions; and much more is this the case where, after a long course of consistent decisions, some new light suddenly springs up, or an excited public opinion has elicited new doctrines, subversive of a former

safe precedent. Cases may exist, also, when a cause is got up in a state court for the very purpose of anticipating our decision of a question known to be pending in this court. Nor do we feel bound in any case in which a point is first raised in the courts of the United States, and has been decided in a circuit court, to reverse that decision contrary to our own convictions, in order to conform to a state decision made in the meantime. Such decisions have not the character of established precedent declarative of the settled law of a state. Parties who, by the constitution and laws of the United States, have a right to have their controversies decided in their tribunals, have a right to demand the unbiased judgment of the court."

The decision of the state court which we are asked to follow seems to us to be in plain conflict with the weight and general current of authority on the subject. It is, too, not only not the logical result of the previous decisions of that court, which may be deemed relevant to the question, but, as we think, distinctly inconsistent with them, and therefore ought not to be accepted as a declaration of the settled law of the state. Nor can we yield to the view so enunciated on the ground that the question is "balanced with doubt." "If we could see fair and reasonable ground to acquiesce in that view, we would gladly do so; but, in the exercise of that independent judgment which it is our duty to apply to the case, we are forced to a different conclusion."

We think that, upon the facts alleged, the circuit court erred in refusing a temporary restraining order and in dismissing the bill. The order of dismissal is therefore reversed, and the cause remanded, with instruction for further proceedings not inconsistent with this opinion.