No. 37,919

*In the Matter of the Petition of the City of Salina to the Board of County Commissioners of Saline County, Kansas, for Findings as to the Advisability of Adding Territory to the City of Salina.*

CITY OF SALINA, *Appellee*, v. GUY A. THOMPSON, Trustee of Missouri Pacific Railroad Company, *Appellant.*

(220 P. 2d 147)

Opinion filed July 8, 1950.

*Ralph M. Hope,* of Wichita, argued the cause, and *Ralph Knittle,* of Salina, and *W. F. Lilleston,* of Wichita, were with him on the briefs for the appellant.

*James P. Mize,* of Salina, argued the cause, and *C. L. Clark* and *Jason K. Yordy,* also of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an appeal by an interested landowner to the district court of Saline county from findings of the board of. county commissioners allowing addition of described territory to the City of Salina upon petition of the city to that board under G. S. 1935, 12-501 and 12-502. Provision for such appeal is made in section 12-502a. The appeal was resisted by the city on the ground that said section 12-502a is an unconstitutional delegation of legislative functions to the district court, and its contention was sustained by the district court. The landowner appeals to this court from the above decision.

The city's petition, filed with the board of county commissioners

on March 15, 1949, asked the board to find that it was advisable to add certain territory (describing it) to the city, that it would be to the interest of the city that it be added, and that the addition would not result in manifest injury to those owning the tracts of land sought to be added (G. S. 1935, 12-501). Guy A. Thompson, trustee of the Missouri Pacific Railroad Company (appellant here), owned a tract of land 216 feet wide and a half mile long in the described territory sought to be added. A hearing was held as provided in section 12-502, and on April 12, 1949, the board found:

"1. That there is an acute shortage of housing facilities in and about the City of Salina, Kansas, and that it is advisable to add said territory described and set out in said petition to the City of Salina, Kansas, and that it would be to the best interests of said City that said territory be added to it.

"2. That the addition of said territory to said City would not result in manifest injuries to the persons, trusts and corporations owning properties and tracts within said proposed additional territory."

The only questions involved in this appeal are: (1) Is G. S. 1935, 12-502a unconstitutional because it confers legislative authority upon the district court; and (2) if section 12-502a is unconstitutional, is the remainder of the act (G. S. 1935, 12-501 and 12-502) also unconstitutional?

The legislature has seen fit to vest authority to change the boundaries of cities in the board of county commissioners. The general legislative scheme for the enlargement of city boundaries is found in G. S. 1935, 12-501 et seq. When the city boundaries are to be enlarged, section 12-501 provides the governing body of the city shall in the name of the city present a petition to the board of county commissioners, and the following sections provide the procedure to be followed, and for the finding to be made by the board as follows:

". . . upon such hearing, if said board of county commissioners shall be satisfied that the adding of such territory to the city will be to its interest and will cause no manifest injury to the persons owning real estate in the territory sought to be added, they shall so find."

After such finding, the governing body of the city may by ordinance enlarge the city to include the territory sought to be added. Section 12-502a, the constitutionality of which is here in question, provides for appeal from the board's findings to the district court. That section reads:

"Any owner of land sought to be taken into the limits of a city under the provisions of this act, who shall be aggrieved by the decision of the board of county commissioners may appeal to the district court of the same county in

the manner and method as now provided by section 19-223, Revised Statutes of 1923."

Section 19-223 provides:

"Any person who shall be aggrieved by any decision of the board of commissioners may appeal from the decision of such board to the district court of the same county by causing a written notice of such appeal to be served on the clerk of such board within thirty days after the making of such decision, and executing a bond to such county with sufficient security, to be approved by the clerk of said board, conditioned for the faithful prosecution of such appeal, and the payment of all costs that shall be adjudged against the appellant."

Are the findings which the board of county commissioners is authorized to make legislative acts solely so as to preclude appeal to the district court as authorized by section 12-502a? Determination of this point involves examination of prior decisions on the question.

The county board in the exercise of its original jurisdiction has at least two questions to determine when a proper petition is presented: (1) Whether the proposed change can be made without manifest injury to the persons owning real estate in the territory sought to be added; and (2) if so, whether the annexation shall be ordered. The first determination is judicial; the second legislative. The first may be made reviewable by a court although the second cannot. We are not to impute to the legislature an intention to disregard the constitution by attempting to give an appeal from a legislative order to a judicial tribunal, if such imputation can be avoided. There is abundant field for the operation of the statute without encroaching upon the legislative power of the board. The appeal provided may be deemed as intended to refer to the only part of the board's action to which it can be made applicable—the judicial part—in determining that no injury would result to landowners by the proposed change. Inasmuch as there is room for the statute to operate without infringing upon the constitution, it will not be held void merely because a literal interpretation of its terms might give it a broader operation which would result in such infringement. The appeal taken in the case should not have been dismissed, for it was effective at all events to bring before the district court for review the question whether the change ordered by the board would cause manifest injury to the appellants, and to empower the court, if it should find that to be the case, to set aside the order attaching territory to the city as having been made without au-

thority. (*Nash v. Glen Elder*, 74 Kan. 756, 88 Pac. 62; *Nash v. Glen Elder*, 81 Kan. 446, 106 Pac. 292; *Town of Olsburg v. Pottawatomie County*, 113 Kan. 501, 215 Pac. 451; *Bolmar v. Shawnee County*, 109 Kan. 91, 197 Pac. 880.)

Appellee city relies chiefly on the case of *Ruland v. City of Augusta*, 120 Kan. 42, 242 Pac. 456, 117 A. L. R. 277, which involved a statute somewhat different from the one in the instant case. In the Ruland case, the legislature conferred original jurisdiction on the district court (R. S. 1923, 12-501, 502) to hear and determine both legislative and judicial questions with reference to enlarging the territory of a city. In that case, the court held the statute was unconstitutional for the reason that the attempted delegation of legislative power to the judiciary was unlawful. In the opinion it was said:

"Without quoting at length from the authorities, the correct legal principles deducible from them governing the territorial boundaries of municipal corporations may be thus stated: (1) The power to create municipal corporations, including the power to designate their boundaries and to increase or to decrease their corporate limits, is purely legislative—it is not a part of either the executive or judicial branch of the government. In the absence of constitutional restrictions the legislature may exercise this power at will, as was frequently done in our territory prior to the adoption of our Constitution. (2) Under a Constitution such as ours that legislative power must be exercised by a general law. (3) In so far as such general law requires the exercise of the discretion of some one in order to effect the creation of a municipal corporation, or the increase or decrease of its territorial limits, such general law must vest such discretion in some board or tribunal having legislative functions —such as the board of county commissioners. (Const., art. 2, § 21.) (4) But, in so far as such general law makes the organization of municipal corporations, or the change of their territorial limits, to depend upon specific questions of fact, such as the number of inhabitants, the amount of taxable property, the consent of a specific portion of the inhabitants, or electors, or taxpayers of the area affected, the trial of the questions whether such required facts exist, and the making of findings as to whether they do, or do not, exist, and rendering judgment thereon, is a *judicial function properly referred to and determined by the courts.* (Emphasis supplied.) (Dillon on Municipal Corporations [5th ed.], §§ 55, 62, 353, 355, 356; Cooley on Municipal Corporations, pp. 29, 31, 32, 98, 100; 28 Cyc. 134, 135, 187; 12 C. J. 856; 19 R. C. L. 700, 701; *Lyon v. City of Fayette*, 38 Idaho 705; *Town of Fairbanks, Alaska, v. Barrack*, 282 Fed. 417 [certiorari was denied, 261 U. S. 615]; *Forsyth v. City of Hammond*, 71 Fed. 443 [reversed on other grounds, 166 U. S. 506]; *Glaspell v. City of Jamestown*, 11 N. D. 86; *In re Incorporation of Village of North Milwaukee*, 93 Wis. 616; *Brenke v. Borough of Belle Plaine*, 105 Minn. 84; *The City of Galesburg v. Hawkinson et al.*, 75 Ill. 152; doctrine adhered to in *North v. Board of Education*, 313 Ill. 422; *The State of Kansas v. Young and others*,

3 Kan. 445; *Hutchinson v. Leimbach,* 68 Kan. 37, 74 Pac. 598; *Nash v. Glen Elder,* 74 Kan. 756, 88 Pac. 62; 81 Kan. 446, 106 Pac. 292; *Bolmar v. Shawnee County,* 109 Kan. 91, 197 Pac. 880.)

"The case of *Town of Olsburg v. Pottawatomie County,* 113 Kan. 501, 215 Pac. 451, well illustrates the difference between legislative and judicial functions in the matter of organizing, or changing the boundaries of municipal corporations. That case involved the proceedings before the board of county commissioners for organizing a city. The statute required the board of county commissioners to find, before the city could be organized, four things: (1) the number of inhabitants in the territory proposed to be incorporated; (2) that the petition for incorporation was signed by a majority of the electors; (3) and by a majority of the taxpayers; and (4) that the prayer of the petitioners is reasonable. The first three of these held to be questions upon which a court could take evidence and determine the facts, and hence to be judicial questions."

It may be noted that the Ruland case cites with approval the cases of *Nash v. Glen Elder,* supra, and *Town of Olsburg v. Pottawatomie County,* supra. As we read the Ruland case, the court held that the district court had power to determine judicial questions but that it was unlawful to grant original jurisdiction to the court which would require findings of fact of purely legislative matters; that such was an unconstitutional attempt to confer legislative powers on the judiciary.

It is well settled in this state that questions purely judicial in their nature arising under general laws, pertaining to the incorporation of cities, or to the increase or decrease of city boundaries, are properly determinable in our courts, and especially so if the questions, not judicial, pertaining to such matters, are left to some body as the mayor and council of the city or the board of county commissioners having legislative and administrative powers. (*Town of Olsburg v. Pottawatomie County,* supra; *Bolmar v. Shawnee County,* supra; *Heatherman v. Kingman County Comm'rs,* 123 Kan. 77, 254 Pac. 321; *State, ex rel., v. Drainage Dist.,* 123 Kan. 191, 254 Pac. 372; *State, ex rel., v. Davis,* 144 Kan. 708, 62 P. 2d 893; *Shawnee County Comm'rs v. Wright,* 147 Kan. 542, 78 P. 2d 44.)

Statutes should not be held unconstitutional unless it is clear that they conflict with constitutional provisions. In determining the constitutionality of a statute questioned as delegating legislative functions to courts, there can be no presumption that such was the legislative intent. The legislature is presumed to have acted within its proper sphere, to have been cognizant of the three branches of our government—the legislative, executive and judicial—and with their respective scope, power and functions, and to have enacted the

statute in question with the purpose of exercising its own legislative powers to the extent necessary to carry out the purposes of the statute, and of submitting to the court only judicial functions properly within its sphere. This presumption must be indulged and is controlling unless it is clear, from the provisions of the statute, that it does in fact attempt to delegate to the courts powers and functions purely legislative.

Our conclusion is that the statute in question is not invalid. The judgment of the district court is reversed with directions to reinstate the appeal and proceed with the trial in accordance with the views herein expressed.