JIM S. CALLEN v. THE CITY OF JUNCTION CITY et al.

STATUTE, Valid — Findings by Judge — Judicial Power. Section 1 of chapter 69 of the Laws of 1886 is not unconstitutional because it delegates legislative power to a judicial officer. The findings of fact made by a judge of the district court by virtue of that statute are the exercise of judicial power.

| 43 | 627 |
| 44 | 579 |
| 43 | 627 |
| 46 | 745 |
| 43 | 627 |
| 56 | 118 |
| 43 | 627 |
| 61 | 841 |
| 43 | 627 |
| 63 | 369 |
| 43 | 627 |
| 65 | 584 |
| 43 | 627 |
| 68 | 38 |
| 68 | 43 |
| 43 | 627 |
| 76 | 484 |

*Error from Geary District Court.*

INJUNCTION denied, on August 29, 1889; and order brought here for review. The facts are set forth in the opinion.

*Jim S. Callen*, plaintiff in error, for himself.
*Thomas Dever*, for defendants in error.

Opinion by SIMPSON, C.: This case was commenced in the district court of Geary county, to restrain the city of Junction City, a city of the second class, and the other defendants in error, who were appointed appraisers to assess damages occasioned by laying out and opening streets through the land of the plaintiff in error, from further proceedings. An application was made to the district judge to grant a temporary restraining order—all parties being represented by counsel—and the writ was denied. The case is here to review the or-

der denying the temporary writ. The case was heard below on the petition, answer, and reply; and the facts admitted by the pleadings are as follows: The land of the plaintiff in error is a three-cornered tract containing about twenty-eight acres. This tract of land was embraced within the corporate limits of the city by an ordinance approved July 9, 1889, that reads as follows:

"AN ORDINANCE relating to and extending the corporate limits of the city of Junction City.

"*Whereas,* A petition in due form has, in manner provided by law, been presented to the Hon. M. B. Nicholson, judge of the district court of Geary, formerly Davis county, Kansas, asking said M. B. Nicholson, as judge of said district court, to make findings as to the advisability of extending the corporate limits of the city of Junction City so as to include therein the body of land adjacent to said city, and commonly known as 'Callen's Field,' the particular description thereof being as follows, to wit: Lot 2, section 1, town 12 south, range 5, east of the sixth principal meridian in Kansas; and,

"*Whereas,* Said M. B. Nicholson, as judge of the district court of Geary, formerly Davis county, Kansas, on the 18th day of May, 1887, at the city of Council Grove, in Morris county, Kansas, upon the hearing of the matter contained in said petition, did find as follows, to wit:

"'1. That it will be to the interest of the city of Junction City to extend the corporate limits thereof, so as to include therein the body of land adjoining said city, more particularly described as follows, to wit: Lot 2, section 1, town 12 south, range 5, east of the sixth principal meridian in Kansas, and generally known as 'Callen's Field.'

"'2. That it will be no manifest injury to the owners of the afore-described land, to have the same included within the corporate limits of said city of Junction City.'

"*And whereas,* Upon appeal taken from said findings to the supreme court of the state of Kansas, by the owners of said described land, the said supreme court duly found and ordered and adjudged that it had no power to reverse, vacate, set aside or modify said findings: therefore,

"*Be it ordained by the Mayor and Councilmen of the city of Junction City:*

"SECTION 1. The corporate limits of the city of Junction City are hereby extended so as to include therein the body of land adjacent to said city, more particularly described as follows, to wit: Lot 2, section 1, town 12 south, range 5, east of

the sixth principal meridian in Kansas, and generally known as 'Callen's Field.'

"SEC. 2. This ordinance shall take effect and be in force from and after its publication once in the Junction City papers.

"CHAS. P. FOGELSTROM, *Mayor.*

"Approved July 9, 1889.

[L. S.]    Attest:   J. B. CALLEN, *City Clerk.*"

This ordinance is pleaded by the defendants in error as justification for their acts.   The reply of the plaintiff in error to this answer alleges that the statutes and ordinances under and by virtue of which all proceedings were had and acts done, are and were at the time unconstitutional and void, and all of said proceedings were had without authority of law, and are null and void.   The contention of the plaintiff in error is this: That § 1 of chapter 69 of the Laws of 1886 is unconstitutional, for the following reasons:

"1. That as no remedy is provided for the aggrieved party by appeal to any court or tribunal whatever, it is in conflict with § 1, article 14 of the constitution of the United States, and thus deprives a person of property without the due process of law.

"2. It is in conflict with article 7 of the constitution of the United States in this, that there is no provision made, nor an opportunity given, whereby a party in interest may obtain a trial by jury.

"3. For the reason given it is unconstitutional, being in violation of § 5 of the bill of rights of the constitution of the state of Kansas, by violating the right of trial by jury.

"4. That the compensation provided for by law for property taken for public use, as followed in this case, is inadequate, unjust, and an unconstitutional method, inasmuch as the appraisers provided for by law are authorized to take into consideration the benefits to be derived by, as well as the damages incurred to the owner.

"5. Said law of 1886 is unconstitutional and in violation of § 18 of the bill of rights of the constitution of the state of Kansas, which provides that 'All persons, for injuries suffered in person, reputation, or property, shall have remedy by due course of law, and justice administered without delay.' This proceeding takes private property for public use without just compensation.

"6. It is in conflict with § 4 of article 12 of the constitution of the state of Kansas, which provides that 'No right-of-way shall be appropriated to the use of any corporation until full compensation therefor be first made in money, or secured by a deposit of money to the owner, irrespective of any benefit from any improvement proposed by such corporation.'

"7. Said law of 1886 is unconstitutional and in violation of § 1, article 2 of the constitution of the state of Kansas, in attempting to delegate a legislative power to the judiciary.

"8. The law is a special one, conferring corporative power."

As to the first objection assigned, it is only necessary to say that the change of the *status* of a tract of land from a farm to city lots, by the exercise of a power granted cities to extend their limits, is not a deprivation of property without due process of law. As to the second and third objections, it may be remarked that if the extension of the limits of a city is a purely legislative power, as the plaintiff in error claims, such a power is not exercised by means of a jury trial. To the fourth objection, a sufficient answer is found in the statement that neither the statute we are considering, nor the ordinance passed in pursuance of it, has anything to do with the question of compensation. He might raise the question embraced in the objection on an appeal from the award of the commissioners. The fifth objection mingles legislative and judicial considerations, but the pith of it is contained in the last sentence; but it must be obvious to all, that a mere change in the use of land from agricultural to city purposes, is not taking private property for public use. The case of *Comm'rs of Pottawatomie Co. v. O'Sullivan*, 17 Kas. 58, holds that § 4, article 12 of the constitution of this state, has application only to canals, railroads, and other similar cases in which some corporation takes a use or benefit in the land other than that enjoyed by the public. It is claimed in the eighth objection that the law is a special one, but this is entirely unsupported; by the express terms of the act it applies to all cities of the second class.

This leaves the seventh objection to contain the spinal mar-

row of the contention of the attorneys of the plaintiff in error, that by this statute the legislature attempted to delegate a legislative power to a judicial officer. The legislature of this state has in express terms conferred upon the judges of the district courts the power to hear and determine whether a proposed ordinance of a city of the second class extending its limits, so as to embrace certain described tracts of land, will be to the interest of the city, and will cause no manifest injury to the persons owning the land. If the findings of the district judge are in favor of the extension, the city is then empowered to pass such an ordinance. If the findings are against the extension, the city has no power to enact that ordinance. While the mode of procedure prescribed by the act conferring the power is different from that provided in the commencement and conduct of an ordinary action, yet all the essential features and requirements of that "due process of law" that is necessary to give vitality, force and effect to judicial proceedings everywhere, are scrupulously observed. The ordinance must be published in the official paper of the city a certain length of time, so as to give notice to all persons whose property interests are in any manner changed or affected by its operation. All such persons are given the right and opportunity to be heard on the question, and to offer evidence to show the injurious operation of the ordinance. The judge has power after such a hearing to approve, disapprove or modify the proposed ordinance, and to make findings which in effect control the extension of the limits of the city. It would seem that by its terms, the section in question does not require the judge to perform any other duty than one purely judicial in its character. The precise question, however, is, that while the exercise of the power conferred is through the instrumentalities of a court, with a close assimilation to the mode and manner of the ordinary exercise of judicial power, the power itself is legislative, and not judicial; that the manner of its exercise does not change the character of the power; that this is legislative power, although attempted to be exercised by the judge, and is violative of,

and repugnant to, that distribution of power made by the constitution among the coördinate branches of the state government.

This question is one about which courts of last resort differ, their decisions being both contradictory and antagonistic. It being a question of doubt, therefore, it should be resolved against the plaintiff in error, as it is a well-settled rule that the action of the law-making power must in all cases be applied, unless it is manifestly in contravention of the constitution. In favor of the jurisdiction under statutes similar in scope and expression to our own, see the following cases: *Kayser v. Trustees*, 16 Mo. 88; *Blanchard v. Bissell*, 11 Ohio St. 96; *Borough of Little Meadows*, 35 Pa. St. 335; *City of Wahoo v. Dickinson*, 36 N. W. Rep. (Neb.) 813; *Burlington v. Leebrick*, 43 Iowa, 252.

Against the jurisdiction, see the cases of *City of Galesburg v. Hawkinson*, 75 Ill. 152; *Shumway v. Bennett*, 29 Mich. 453; *The State, ex rel., v. Simons*, 21 N. W. Rep. (Minn.) 750; *People v. Carpenter*, 24 N. Y. 86. There may be other cases, but these are sufficient to indicate the conflict on the question.

Our own view can be expressed in a few sentences: The power to create and regulate municipal corporations, define, extend or limit their boundaries, and commit to them certain subjects for local regulation, is the exercise of a purely legislative authority. An organic command requires this legislation to be applicable to classes, and not special as to each municipality. A general law is passed authorizing cities of the second class to extend their boundaries so as to include adjacent territory, on certain conditions, or depending on certain facts. The existence of these conditions, or of these facts, is made the subject of judicial inquiry and determination, and this is done to protect the property interests of the land-owners, and not to commit the whole control to a city council whose interests in the city might induce arbitrary action against the land-owner. In other words, the judge says in each case whether or not the conditions authorizing the absorption by the city exists as to this particular piece of land. The legis-

lature can confer on the city council power to make a local regulation, and this necessarily involves discretion as to what it shall be; but the question as to whether that discretion has been exercised within the limitations of the power delegated, is a judicial question pure and simple, and nothing else. This section of the statute does not confer upon the judge the power to extend the limits of the city, in the first instance, but only to approve or disapprove the ordinance of the city making the extension. If that part of the section requiring the district judge to make and certify the findings had been omitted, and the city council had then passed an ordinance to extend the limits of the city so as to include this land in controversy, could it be doubted but that the owner, in a proper action instituted for that purpose in the district court of Geary county, could contest with the city its power, under the delegated authority, to include these tracts of land? We think not. To avoid separate suits of this character by individual landowners, and before property interests are affected, and perplexing complications arise, this section provides for a determination of the rights of all the parties in one action.

The practical effect of this statute is to submit to the district judge in advance of its enactment the question of the legality of the city ordinance. The legislature of this state can only create and regulate municipal and other corporations by general laws. It cannot either enlarge or reduce the corporate limits of a city of the second class, (*Gray v. Crockett*, 30 Kas. 138; *Wyandotte v. Wood*, 5 id. 603,) by special enactment. It is manifestly absurd to contend that when any one of the cities of the second class wants to extend its limits so as to include adjacent territory, the only manner in which it can be done is by a legislative enactment extending the limits of all the cities of the second class in the state. The particular necessities of each city of the second class are such that, coupled with our constitutional provisions, the only manner in which its corporate limits can be extended is by a general law authorizing the extension on such terms and conditions as will not result to the injury of owners of adjacent property, or will

not empower a city government to arbitrarily include agricultural land within the corporate limits. These very things the statute we are considering attempts to do by making the existence of equitable conditions dependent on the findings of a judicial officer, and regulating the power of the city council to make such an extension by such findings. Such questions are not always open to judicial inquiry. It would be difficult to state circumstances under which the courts would not be open for a resident of a city or an adjacent land-owner to contest the validity of any action of the city government that does injury to his property, whether within or without the corporate limits. The manner of the extension and the terms and conditions upon which the extension can be made must be determined by the legislature; but whether the manner has been observed, the terms complied with, or the conditions exist, in the very nature and essence of things are judicial questions. The effect of this statute is to anticipate litigation, and to decide in advance, after due notice and a proper hearing, the very questions that adjacent land-owners who consider themselves aggrieved might otherwise seek to have determined by various forms of action. This statute, like almost every other legislative act, may by its practical operation provoke judicial inquiry as to its meaning, requirements, or effect, or as to the power of the legislature to pass it. Similar statutes have been in force in this state for years, and cities of the third class have been organized by judges of the district courts. Certain powers have been conferred upon the probate judge with reference to these matters. (*Mendenhall v. Burton*, 22 Pac. Rep. 548.) We had occasion in the case of *City of Emporia v. Smith*, 42 Kas. 433, to say that "no good reason has been given, and we do not believe that a good reason can be given, why the law complained of is unconstitutional." It is true that the question now discussed was not presented in this case, but we did consider and determine in that case that the legislature could confer on cities of the second class the power to so extend their limits as to include adjacent land that had been subdivided into lots and blocks. On the general propo-

sitions involved, the case of *Kirkpatrick v. The State*, 5 Kas. 673, is in harmony with what we have said in this case. All these considerations are influential in controlling our opinion in favor of the exercise of the power conferred by the statute on the district judges of the state. The question of homestead does not arise; there is no averment in the petition that the land was occupied as a homestead.

It is recommended that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.