Davis, C. J.
The act of the general assembly-under which the petition below was filed (95 O. L., 259, Revised Statutes, sections 1536-60 and 1536-61) is assailed upon two grounds; first, that it imposes legislative power upon the judiciary; and, second, that it discriminates in favor of an arbitrary, unreasonable and unconstitutional class.
It would be difficult, if not quite impossible, to maintain that the detachment of territory embraced within the limits of a municipal corporation is not within the legislative power conferred on the general assembly. At least, it seems to be the settled law of this jurisdiction that the legislature may either attach or detach territory adjacent to a municipal corporation. But that is not the proposition which is involved in the decision of this case. The question to be determined here is whether or not the legislature, in providing the conditions and limitations under which the legislative will may be carried out in a general law, may choose the judicial department as its instrumentality.
The foundation of the argument against the constitutionality of this act is laid upon the doctrine of the distribution of governmental powers and functions. It seems to be assumed that the separation of executive, legislative and judicial powers is complete and distinct under the constitution. Theoretically it is so; but in practice it is not so and never was so; and by the best modem writers on political science it is recognized to be practically impossible to distinctly define the line of demarkation between *187 the different departments of government. This was well expressed in Taylor v. Place, 4 R. I., 332: “To some extent, and in some sense, each of the powers must he exercised by every other department of the government in order to the proper performance of its duty.” So likewise it was said by White, J., in State ex rel. v. Harmon, 31 Ohio St., 250, that “The distribution of powers among the legislative, executive and judicial branches of the government, is, in a general sense, easily understood; but no exact rule can he laid down, a priori, for determining, in all cases, what powers may or may not be assigned by law to each branch. The power of allotting to the different departments of government their appropriate functions is a legislative power; and in so far as the distribution has not been made in the constitution, the power to make it is in the general assembly, as the depository of the legislative power of the state. ’ ’ It was long ago convincingly pointed out by Bentham that the work of the judiciary is, in its final analysis, chiefly judicial legislation; and a distinguished publicist of the present day, Prof, (foldwin Smith, has declared that, “The separation of the executive power from the legislative is a dream, though Montesquieu has established the belief that it is one of the great securities of liberty.” And just here it is of some importance to note the absence of a distributive clause in the constitution of Ohio, although such a clause appears in the constitutions of most of the states. It is nevertheless true, iii the American theory of government, that each of the three grand divisions of the government, must he protected from encroachments by the others, so far that its integrity and independence may be preserved. From these considerations it seems to us *188 that at the outset of this argument too much has been assumed for its fundamental proposition.
While there is no clause in the constitution of this state expressly distributing the powers of government, and none expressly restricting the executive and judicial branches, the legislative branch is expressly prohibited from exercising judicial powers, except as expressly conferred in the constitution, and it is expressly empowered to define the jurisdiction of the courts. The power of defining the functions of the executive and judicial departments is clearly a legislative power, which, under the constitution of Ohio, is only limited by the general principle that a grant of general powers to any department constitutes of itself an implied exclusion of all other departments from the exercise of such powers. We quote again from State ex rel. v. Harmon, supra, “In so far as the distribution has not been made in the constitution, the power to make it is vested in the general assembly, as the depository of the legislative power of the state.” So that when we come to the border line of legislative power and it is difficult to determine whether an act is wholly within the legislative domain or entirely within the judicial boundaries, the constitution not having clearly defined its position, it is within the power and duty of the legislature to determine to which department it shall belong. It results that if the jurisdiction conferred by this act upon the court of common pleas and the judge thereof is not conclusively judicial in its character it is nevertheless within the eonstitu'tional right of the general assembly to impose the jurisdiction upon the court and judge because it is in the nature of judicial power and it is in aid of executing the express legislative will which is *189 declared to be that “thereafter such lands shall not be a part of said city or village, and shall be a part of the township to which the same has been so attached.”
In Moers v. The City of Reading, 21 Pa. St., 202, it was tersely remarked by the Chief Justice that “Half the statutes on our books are in the alternative, depending upon the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such a discretion is the making of the law. ’ ’
This distinction has been very clearly laid down by Ranney, J., in the leading case of Railway Co. v. Commissioners, 1 Ohio St., 87-88, as follows:
“But while this is so plain as to be admitted, we think it equally undeniable, that the complete exercise of legislative power by the general assembly, does not necessarily require the act to so apply its provisions to the subject matter, as to compel their employment without the intervening assent of other persons, or to prevent their taking effect, only, upon the performance of conditions expressed in the law. * * * But because such discretion is given, are these, and all similar enactments, to be deemed imperfect and nugatory? It would take a bold man to affirm it. In what does this discretion consist? Certainly not in fixing the terms and conditions upon which the act may be performed, or the obligations thereupon attaching. These are all irrevocably prescribed by the legislature, and whenever called into operation, conclusively govern every step taken. The law is, therefore, perfect, final, and decisive all its parts, and the discretion given only relates to its execution. It may be employed or not employed *190 —if employed it rules throughout; if not employed it still remains the law, ready to he applied whenever the preliminary condition is performed. The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.”
The doctrine contended for above has been approved and applied in Zanesville v. Telephone Co., 64 Ohio St., 67; Dowling v. Lancashire Ins. Co., 92 Wis., 63; Field v. Clark, 143 U. S., 650; People v. L. I. R. R. Co., 134 N. Y., 506, and in many other cases which might be cited. See note 2, 8 Cyc., 835.
But coming to a closer analysis of this statute, does it invoke the exercise by the common pleas court or judge of any powers other than judicial? We think not. It is indisputable that it is a judicial function to hear and determine a controversy between adverse parties, to ascertain the facts, and applying the law to the facts, to render a final judgment. In this statute the general assembly has recognized the fact that individual rights as opposed to public interests may have been encroached upon by the rape and taxation of unplatted, and it may be, unplattable, farm lands for city and village purposes without benefit to the owner; and has provided that when such a condition has been found to exist, “thereafter such lands shall not be a part of such city or village.” This is a general statute and in order to provide for its due administration in all cases of the kind which the legislature had in mind, it is provided that a suit may be brought by petition *191 in the court of common pleas of the county in which the lands are situated, with the owner as plaintiff and the city or village as defendant, “setting forth why such lands should he' detached and the relief prayed for. On such petition a summons shall issue as in other actions, and such cause shall proceed as in other causes.” If, on the hearing of the cause, the allegations are found to he true, or in the general language of the statute, the lands are found to he farm lands and that the detachment of the same Avould not “materially affect the good government” of the adjacent territory in the city or village, the court may “in his discretion” make a decree, etc. It has been strongly urged against the validity of this statute that it authorizes the court upon considerations of “good government” and in the exercise of “his discretion” to order or not to order the detachment of unplatted lands and that this confers legislative power; but this, we insist, is a misinterpretation of the statute. It is incumbent upon us to give it, if possible, such an interpretation as will make it constitutional, and not to strain its language so as to defeat the will of the legislature. Accordingly, it seems to us that the clause “without materially affecting the good government of the adjacent territory within such city or village limits,” and the phrase “in his discretion,” do not import an absolute discretion upon a matter of public policy affecting the municipal government, but rather a judicial discretion to be exercised upon the* hearing of the cause in determining whether the alleged reasons for detachment have a foundation in fact and whether the detachment of the lands would in fact substantially embarrass the municipality. If, for example, it should appear that the land owner was *192 taxed for municipal purposes and was not, and could not, be correspondingly benefited, it would not be a sufficient reason for withholding the> order detaching the land merely because the municipality would otherwise lose the taxes. It should appear that the corporation would in some way be substantially prejudiced by detachment. This would only appear by evidence introduced upon a formal hearing. It is clear to us, therefore, that the power conferred by this statute upon the court is judicial power, granted for the purpose of aiding the general assembly in carrying out its legislative will; and that the decree of the court therein authorized is not an original political act, and that it derives its efficacy solely from the application of the law as declared in this act of the general assembly. City of Wahoo v. Dickinson, 23 Neb., 426; City of Burlington v. Leebrick, 43 Ia., 252; Callen v. Junction City, 43 Kan., 627; Kayser v. Trustees, etc., 16 Mo., 88; City of Winfield v. Lynn, Supreme Court of Kansas, 57 Pac. Rep., 549.
Upon the subject of unreasonable classification we do not think it necessary to add anything to what has been said in the recent case of The Cincinnati Street Railway Company v. Horstman, 72 Ohio St., 93.
We are of the opinion that the statute is constitutional ; and that the petition stated facts sufficient to constitute a cause of action. The 'demurrer to the petition should have been overruled. The judgment of the circuit court reversing the judgment of the court of common pleas and remanding the case for further proceedings is therefore

Affirmed.

Price, Summers and Spear, JJ., concur.
Shauck and Crew, JJ., dissent.