# CHARLESTON.

## MORRIS v. TAYLOR.

Submitted September 7, 1911.    Decided April 9, 1912.

1.  CONSTITUTIONAL LAW—*Departments of Government—Judiciary —Incorporation of Cities.*

    In authorizing circuit courts to perform the duties prescribed for them in sections 2 and 9 of chapter 47 of the Code, respecting the incorporation of cities, towns and villages, the legislature did not violate Article V. of the Constitution of this state, requiring the legislative, executive and judicial departments to be kept separate and distinct and forbidding the exercise of the powers of more than one of them at the same time by any person, except justices of the peace.  (p. 619).

2.  SAME—*Judicial Questions—Incorporation of Cities.*

    The discretion vested in such courts by said sections is administrative and judicial, not legislative.  (p. 622).

3.  MUNICIPAL CORPORATIONS—*Proceedings to Incorporate—Judicial Power.*

    Under the authority vested in it by section 2 of said chapter, a circuit court may exclude from the territory, included in the incorporation proposition adopted by a vote of the inhabitants thereof, such portion thereof as in its opinion makes the territory unreasonably disproportionate to the number of residents therein, and award the certificate of incorporation limiting the territory to the residue, over the protest of a majority of the voters by petition and remonstrance against such exclusion and against incorporation of the residue after the exclusion.  (p. 628).

Error to Circuit Court, Harrison County.

Information by Will E. Morris, Prosecuting Attorney of Harrison County, against E. Ottis Taylor and others to have the incorporation of the Town of Stealey Heights declared null and void.  From a judgment dismissing the information and quashing the writ, the informant brings error.

*Affirmed.*

*Edward G. Smith* and *Felix O. Sutton,* for plaintiff in error.

*Davis & Davis* and *Millard F. Snider,* for defendant in error.

POFFENBARGER, JUDGE:

At the relation of certain citizens, Will E. Morris, Prosecuting Attorney of Harrison county, filed an information in the nature of a writ of *quo warranto* against certain persons as mayor, recorder and councilmen of the town of Stealey Heights, incorporated under the provisions of chapter 47 of the Code, the object of which proceeding was to have the incorporation of said town declared null and void upon two grounds: (1) alleged unconstitutionality of said chapter 47 of the Code, purporting to authorize such incorporation, and (2) non-compliance with the requirements of said statute. Upon the hearing, the court dismissed the information and quashed the writ.

Since the decision in *In re Union Mines,* 39 W. Va. 179, and *Elder* v. *Central City,* 40 W. Va. 222, holding said statute constitutional, some alterations have been made in it, necessitating, it is said, a different conclusion. Section 2 provides as follows: "Any part of any district or districts not included within any incorporated town, village or city, and containing a resident population of not less than one hundred persons and if it shall include within its boundaries a territory of not less than one-quarter of one-square mile in extent and not more than a reasonable amount of territory proportionate to the number of residents therein (the exact extent of the territory to be included therein, to be within the discretion of the circuit court granting the charter,) may incorporate as a city, town or village under the provisions of this chapter." Section 9 provides that upon the filing of a certificate, prescribed by section 8, and satisfactory proof that all the provisions of the foregoing sections of the chapter have been complied with, the circuit court may, at its discretion, by an order entered of record, direct the clerk of the said court to issue a certificate of incorporation of such city, town or village, in the form prescribed by that section, and then declares "from and after the date of such certificate, the territory embraced within the boundary mentioned in said certificate shall be an incorporated city (town or village) by the name specified in the said notice and certificate."

The element of discretion, committed to the court by these two sections is the ground of the charge of unconstitutionality.

This power in the court is a mere condition annexed by the legislature to its grant, to the people of any community, not already included in some city, town or village, of the right to incorporate themselves and the territory in which they reside into a city, town or village. Unrestrained by any constitutional limitation, the legislature could have made this grant unconditionally. By its sovereign power, it could have ordained that the people of that certain territory should constitute such a corporation. A provision of the constitution has laid restraint upon this power of inhibiting the creation of a corporation with less than two thousand population by a special act, and requiring provision to be made therefor by a general law. Thus restrained by an organic provision, the legislature could have prescribed certain conditions, the existence of which would *ipso facto* create a corporation. It could have said that a certain number of inhabitants of a certain area of land, laid out in a certain way, should constitute a municipal corporation. In adopting a different plan, and requiring certain preliminary inquiries to be made and acts to be performed, as conditions upon which this grant of the right to be a corporation shall vest, it does not change the principle of its action. In requiring the approval of the grant by the circuit court, it has not destroyed the nature of that grant, nor delegated its power to a subordinate.

The statute is a grant of a right to such people as are able to bring themselves within the conditions annexed to it and actually do so. It is not an unconditional grant, nor is the statute self-executing, but it is a grant to the people, to become effective upon their bringing themselves within its terms and conditions and without any further action on the part of the legislature. It is a general law under which rights vest or can be made to vest, like the laws of descents and distributions, the law providing for the incorporation of private joint stock companies and the law providing for the alienation of property by deed and will. No person can inherit or take under the statute of descents and distributions until he comes within the conditions annexed to the grant of the right of inheritance. These statutes vest no rights to property in persons who are not born. As to such persons, as well as to those now in being, the rule declared

by law exists and the rights vest, when the persons come within the conditions. Under other laws, something must be done by the beneficiaries of the grant to vest the rights granted, but the principle is the same, the right emanates from the sovereign. Private corporations can be organized under the general laws, but they do not exist until after organization, and in the organization of them the legislature does not participate. It has performed its function, by prescribing the rule and laying down the conditions, to be complied with by those who desire to avail themselves of the right to be a corporation, conditionally given by it. Certain things must be done and a certain agreement filed with the secretary of state. This officer does not create the corporation nor organize it. His issuance of the certificate is only the consummation of one of the conditions upon which the legislature has said the right shall be dependent. Private corporations are always organized by agreement, because the formation of such an institution brings its members into a contractual relation. Recognizing this relation, the legislature made the agreement the principal condition in the grant. Such an agreement is not contemplated in the case of a public corporation, for the reason that such corporations are not ordinarily formed by agreement, and there is no element of contract in them. In providing by general law for the organization of public corporations, therefore, the legislature, suiting its action to the nature of the subject matter, required a vote by ballot to ascertain the will of the majority, instead of an agreement. But this does not alter the principle underlying its action. There is a grant of a right in this instance as in the other. The difference lies simply in the mode prescribed for taking the benefit of it. It is simply the requirement of compliance with different and additional conditions, annexed to the grant, because, from the very nature of the thing granted, it was necessary to prescribe different and further conditions, all of which are enumerated in the statute.

Whether these things have been done in a given case, are mere questions of fact, and it was apparent to the legislature that there may be disagreement as to the state of facts, and attempts on the part of the minority to defeat the will of the majority by fraud and trickery. Hence the necessity of authorizing some

person or tribunal, to settle such disagreements and ascertain, in an authoritative manner, the facts and the will of the majority. The investigation and determination of such questions are functions peculiar to courts. Hence it was most natural and consistent with the principles of government to call upon the courts to make such investigations and clothe them with power to do so. Whether this power is strictly judicial or not, the thing ultimately determined by the court is not whether the people of the territory have a right to be a corporation. The legislature has granted that right to all of the people of the state, who put themselves within the conditions annexed. What the court determines is whether the people desiring to form such a corporation have put themselves within those conditions, just as it determines whether a man is within the conditions which the law says make him an owner of property. Having ascertained that, the court awards a certificate of incorporation, just as the secretary of state issues the certificate of incorporation to a joint stock company upon the filing of a proper agreement and payment of the license tax and fees.

The discretion vested in the court is not a discretion to grant a charter, but only to withold or refuse it, upon finding some substantial reason for so doing. The court has no initiative. Its sole power is to veto and this power is perhaps not arbitrary. Certainly the legislature never intended a refusal of the certificate by a court without any reason for such action. The grant is general and intended to become effective, unless something peculiar and abnormal in the situation makes it unreasonable and unjust to allow it to do so. The legslature certainly had the power to say this grant should not become effective under certain conditions, naming them, but the difficulty and impossibility of foreseeing and providing for all of the conceivable variety of circumstances under which people might endeavor to take the benefit of the grant, some of which would render it unjust and unreasonable, is perfectly obvious. Having the power to say, notwithstanding the general grant, that no incorporation should occur under given circumstances, working injustice and unreasonable hardship, the legislature could adopt a standard, measure or criterion by which to determine what circumstances would bring forth such results under the unrestrained

operation of the law, and did adopt the judgment and opinion of the circuit courts of the state.  There are many instances in which the reasonableness and justice of things are referred to the courts as judicial questions.  It may have occurred to the legislature that there are communities in which, owing to the illiteracy or viciousness of the inhabitants, contrary to the normal conditions prevailing in the state, the power of local self-government would be dangerous and productive of evil results, and ought not to be allowed.  It may have assumed that, contrary to the usual conditions, under which the court would have no hesitancy, or ought not to have, in complying with the expressed will of the majority, there might be an application for incorporation by a large and vicious population, inhabiting the particular territory only temporarily and by whom local self government would be abused and prostituted to improper ends and purposes, injurious to the public.  Whether such conditions exist is a question of fact, ordinarily falling within the scope of judicial inquiry.  In ascertaning it and refusing the certificate, the court would merely construe the statute as not intended to confer the right of incorporation under such circumstances and declare accordingly.  The function performed by it would be the administration of the law, not the granting of rights as a sovereign.  That such a function is judicial has been necessarily determined by the decisions of this Court in *Ferry Co.* v. *Russell,* 52 W. Va. 356, and *Williamson* v. *Hays,* 25 W. Va. 609.  In these cases, the right to establish a ferry was involved.  The legislature had delegated to the county court, as a police and fiscal board, the power "to determine whether the ferry ought to be established or not."  The statute allowed an appeal to the circuit court, and thence to this Court.  The elements of reasonableness and justice were involved and treated by this Court as judicial questions.  Judge BRANNON, delivering the opinion, in the former case, said: "The evidence, does not show that the travel will support three; it shows that it will not.  * * *  Another element in the question is, that Russell had a ferry granted by authority, and it is property, and the report and evidence show that it will be injured by the proposed ferry. You will say that his property cannot bar the public need. I say so too; it cannot bar it, but it goes into the scales."  Here

is an instance in which the court, acting in rather an administrative capacity, took cognizance of the reasonableness and justice of a claim to a legislative grant as judicial questions. The function performed under this corporation statute is very similar and the general principle underlying it the same.

The word "discretion," used in these provisions, does not necessarily signify legislative discretion. Discretion does not belong exclusively to the legislature. Many discretionary powers are vested in executive officers and all courts possess and exercise some discretionary powers. Discretion is essential to the due and effective execution of the powers of each of the three great departments and all possess it in a greater or less degree. The exercise of discretion by a legislative body does not make its function judicial, nor does the exercise of discretion by the executive make his function either legislative or judicial. So the exercise of discretion by a court does not make its function either executive or legislative. In short, it is neither a criterion, nor a determining factor.

If the vesting of such discretion as we are discussing in a court carried with it a modicum of legislative power, it would not amount to inhibited delegation thereof. The separation of the powers of the state into executive, legislative and judicial departments is not so absolute as to make them wholly independent. They are co-ordinate, working together and carrying into effect conjointly the whole power of the state. Though touching one another at all points and united as are all parts of the human body, each performing its peculiar function, all three must be in constant operation and to some extent connected and interdependent. Story on Constitutions, at sec. 525, defines more clearly and accurately than any other writer, the true meaning and effect of the separation of powers, contemplated by the constitution, saying: "When we speak of the separation of the three great departments of the government and maintain that that separation is indispensable to public liberty, we are to understand this maxim in a limited sense. It is not meant to affirm that they are to be kept wholly and entirely separate and distinct, and have no common link of connection or dependence, the one upon the other, in the slightest degree. The true meaning is, that the whole power of one of these departments should

not be exercised by the same hands which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free constitution. This has been shown with great clearness and accuracy by the author of the Federalist." This doctrine has been adopted by this Court. "But the constitution, within itself, after the declaration of this general doctrine, proceeds to make many laps of the various departments, so as to make them mutually dependent upon and supporting each other; thus welding them into an harmonious whole, or three distinct departments in one, for the preservation, at the smallest expense possible, of the largest freedom of individual rights consistent with the general welfare. Were it practicable to keep these three departments wholly distinct, the increase of the necessary offices and officers would be so great, and the expense thereof so burdensome, as to render the cost of the administration of the government unbearable, especially to the citizen tax-payer who must contribute and yet not share in the distribution of the taxes. So that, while we find that the constitution, as much as it keeps the three heads of the three departments comparatively distinct and independent of each other, yet as we move down the scale these several powers become more complicated and interwoven with each other, until we find the common council of every village exercising legislative, executive and judicial functions, indiscriminately, by authority of the same constitution which declares that these functions shall be kept distinct." *Bridge Co.* v. *Paull,* 39 W. Va. 142.

Under this statute the court does not exercise the whole legislative power, respecting the incorporation of towns, and the delegation of authority, if any, is, therefore, not inhibited by the constitution, if Story's theory is correct. The court has no power of initiation. The inhabitants of the territory must move before it can do so. But for the legislative act, they could not move so as to set the court in motion. Hence the legislature moves all. The functions performed by the court are of minor and secondary importance and would be wholly ineffective and futile but for the grant made by the legislature. The statute gives it no power to impose the organization of a corporation upon people who do not desire it. It has no power to grant a certificate of

incorporation, but only to refuse it. It simply hears the interested parties, those who come forward professing to represent a majority of the voters of the community, demanding as against the minority, a right which the legislature has given, and the remonstrances of the minority, asserting non-existence of the conditions essential to the vesting of the right. The latter may show fraud in the certificate, the census, the survey, or all of them and thus defeat the claim. They may show that the whole population of the community, with the exception of one man, are tenants of that man under a lease, which will expire in a year or less time, and that the sole purpose of the application is to burden that one man's property with taxes for the benefit of the petitioners in the form of salaries of officers provided and otherwise. May not the legislature have intended the withholding of a charter under such circumstances, because the grant thereof would be so unreasonable and unjust? And in refusing it, would not the court simply administer and apply the statute, in accordance with the legislative intent, as in the case of the administration of other statutes?

In performing this function the courts exercise powers very similar to those required in the administration of many other statutes. The work of the courts in the appropriation of private property for public use is very similar. The taking of such property is not an ordinary adversary proceeding or controversy between man and man, to settle conflicting claims of title or right. The sovereign power of the state gives the right to a citizen or a corporation to take the property of another person or corporation for public use on payment of compensation, and the legislature commits to the courts the administration and effectuation of that grant, not as a granting agent, but as one for determination of questions of law and fact arising upon the claim made under the grant. The power of the court is interposed for no other purpose than to determine judicially whether the applicant has put himself within the conditions annexed to the legislative grant to one man of the right to take and use the property of another for the particular purpose. The court determines whether the use for which it is to be taken is public, and whether it is necessary to take the property and ascertains its value. Here, as in the other case, the court has no power of

initiation. It makes no grant. It creates nothing, ordains nothing. It merely determines questions of law and fact arising in the execution and carrying into effect the grant made by the legislature. The statute authorizes courts to appoint trustees to take and hold legal title to church property. The object of this statute was to enable religious congregations to have a means of preserving the record of the legal title to their property and vest that title in somebody, clothed with power to protect the property by legal proceedings. It was a grant to these congregations by the legislature of rights they did not otherwise possess. Upon the application for the benefit of this grant preliminary questions arise. Conditions annexed must be complied with to obtain the appointment of the trustees. The applicants must be such bodies as the statute contemplated, and the court must determine these preliminary questions. The same jurisdiction is vested in the courts to appoint trustees for secret orders, colleges, high schools, Sons of Temperance, orphans' asylums, children's homes and other beneficial associations. A similar power is vested in them, respecting the real estate of infants. The right is granted to convert their real estate into money under certain conditions, to be ascertained by the courts. In none of these instances does the court perform its ordinary function of determining conflicting claims. They are all administrative, not adversary proceedings, but they involve the exercise of judicial power.

The authorities upon this question are by no means uniform and it would be difficult to determine whether the weight of authority is for or against the position here taken. However that may be, I am confident our conclusion is fully sustained by legal principles and that there is no delegation of legislative authority in violation of the constitution. It would be useless to analyze all of the conflicting decisions. Some of those sustaining the conclusion here stated are *Callen* v. *Junction City,* 43 Kan. 632; *Zanesville* v. *Telegraph & Telephone Co.,* 64 O. 67; *Cooper's Case,* 22 N. Y. 84; *Kayser* v. *Bremen,* 16 Mo. 88; *Blanchard* v. *Bissell,* 11 O. St. 96; *Borough of Little Meadows,* 35 Pa. 335; *Wahoo* v. *Dickenson,* 23 Neb. 426; *Burlington* v. *Leebrick,* 43 Ia. 252. Some of the cases to the contrary are *State* v. *Simmons,* 21 N. W. 752; *State* v. *Young,* 9 N.

W. 737; *In re North Milwaukee,* 33 L. R. A. 638; *Territory* v. *Stewart,* 8 L. R. A. 106; *Galesburg* v. *Hawkinson,* 75 Ill. 152; *People* v. *Bennett,* 29 Mich. 453. Some of these are analyzed and their reasoning criticized in my opinion in *State* v. *Harden,* 62 W. Va. 313, 378.

After the survey, census and election and presentation of the result of the election to the court, certain property owners came in by petition and asked that their property be excluded from the territory of the proposed corporation. A number of citizens also came in protesting against the exclusion and against the grant of a certificate of incorporation in case the exclusion should be made. The court, however, excluded a portion of the territory and then directed the certificate to be issued. It is said a majority of all the voters in the territory protested against the issuance of the certificate after the exclusion of a portion of it. This is immaterial and does not invalidate the certificate. The vote to incorporate was taken with knowledge of the power of the court to determine the extent of the territory on the basis of reasonableness in the proportion of inhabitants to territory. In voting to incorporate, they knew the incorporation was subject to this power and authority in the court to reduce the area and exclude territory from that embraced by the survey. The statute contemplates all these steps in advance of any demand upon the court for its action. Nevertheless it confers upon the court the power to determine the extent of the territory, and there is no provision for a re-submission of the question of incorporation to the voters, after an alteration of boundaries by the court. The extent of the territory is a question for the voters in the first instance, but ultimately for the court. Those who voted to incorporate did so with full knowledge of the possibility of a reduction of the area and must be deemed to have assented to it. As no mode of revocation or recall of their assent is provided by the statute, the legislature must have intended it to be irrevocable, except by annullment of the charter by an election, after incorporation, in accordance with the provisions of section 44a of chapter 47 of the Code.

For the reasons stated, the judgment will be affirmed.

*Affirmed.*