THE CITY OF HUTCHINSON v. ALICE M. LEIMBACH *et al.*

No. 13,315. (74 Pac. 598.)

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW—*Change in Corporate Limits—Act of 1897 Invalid.* That part of chapter 267 of the Laws of 1897 (Gen. Stat. 1901, §§ 7894-7903) which provides that whenever persons desiring to remove any tract of land from the corporate limits of a city shall petition for such removal it shall be made, provided that after published notice the district court shall find that no public or private right will be injured or endangered, all considerations as to any right of the city or its creditors to look to the property for taxes being excluded, is unconstitutional, in that it attempts to confer a legislative power upon such petitioners.

Error from Reno district court; M. P. SIMPSON, judge. Opinion filed December 12, 1903. Reversed.

*A. C. Malloy,* for plaintiff in error.

*W. G. Fairchild,* for defendants·in error.

The opinion of the court was delivered by

MASON, J. : This was an action brought to enjoin the collection of city taxes upon real property which at one time was within the city of Hutchinson, but which the owners claim has been legally taken out of the corporation. The district court granted the injunction and the city brings the matter here for review. The proceedings for placing the land outside the corporate limits were had under chapter 267 of the Laws of 1897 (Gen. Stat. 1901, §§ 7894–7903), and the contention of the city is that this statute is void because it attempts an unconstitutional delegation of legislative authority. Defendants in error claim that the statute has been upheld repeatedly by this court against this objection. This, in a sense, is true, but a review of the authorities will discover that the case ·presents a question to which heretofore the attention of the court has not been directed specifically.

The first case directly involving any feature of the question was *City of Emporia v. Smith,* 42 Kan. 433, 22 Pac. 616, which arose under section 1 of chapter 69, Laws of 1886 (Gen. Stat. 1901, § 1052); but in which it was merely decided that the power given to the legislature by section 21 of article 2 of the Kansas constitution, to confer on the tribunals transacting county business powers of local legislation and administration, is not exclusive, but that such powers with reference to the change of city boundaries might be conferred on the mayor and councilmen.

The next case was *Callen v. Junction City,* 43 Kan.

627, 23 Pac. 652, 7 L. R. A. 736. This arose under the same statute, which reads as follows :

"That whenever the city council of any city of the second class desire to enlarge the limits thereof from the territory adjacent thereto, said council shall, in the name of said city, present a petition to the judge of the district court of the county in which such city is situated, setting forth by metes and bounds the territory sought to be added, and asking said judge to make a finding as to the advisability of adding said territory to said city. Upon such petition being presented to said judge, with proof that notice of the time and place said petition shall be so presented has been published for three consecutive weeks in some newspaper published in said city, he shall proceed to hear testimony as to the advisability of making such addition ; and upon such hearing, if he shall be satisfied that the adding of such territory to the city will be to its interest, and will cause no manifest injury to the persons owning real estate in the territory sought to be so added, he shall so find ; and thereupon the city council of said city may add such territory to said city by an ordinance providing for the same ; providing, that no such proceeding shall be necessary where the territory sought to be added is subdivided into lots and blocks, but in such cases the city council of such city shall have power to add such adjacent territory to said city by ordinance."

It was urged that the statute was void inasmuch as it attempted to confer legislative powers upon a judicial officer. The opinion reviewed at length the conflicting authorities bearing on the question and upheld the statute on the theory that the legislative power to determine, as a matter of policy, whether a tract of land should be added to the city was conferred by it upon the mayor and council, under the restrictions that it should not be exercised in any case where it would not be to the interest of the city, or where a manifest injury would be caused to property-owners,

and that whether these conditions existed was a judicial question, properly left to the determination of the district court. The principle is that while the court may be said to decide whether a change ought to be made the council determines whether it shall be made. The legislative fiat proceeds from the council and not from the court.

The next cases were *Huling v. The City of Topeka*, 44 Kan. 577, 24 Pac. 1110, and *Hurla v. Kansas City*, 46 id. 738, 27 Pac. 143, arising under section 1 of chapter 99, Laws of 1887 (Gen. Stat. 1901, § 724), which is similar to the section quoted, but applies to cities of the first class, and the action of the court is made to follow, instead of precede, that of the council. The part directly in point reads as follows:

"Thereupon said court shall determine whether said publication has been made as herein required, and shall then consider said ordinance, and by its judgment either approve, disapprove or modify the same, first hearing all objections, if any, and proofs, if any, offered by said city or persons affected by said ordinance. Should said ordinance be approved or modified by said court, then the limits or area of said city shall be enlarged or extended as therein designated, from the date of such approval or modification; but should it be disapproved entirely, then the limits or area of the city shall remain unaffected by said proceedings; but should the same be approved entirely, or modified and approved, the judgment of said court shall stand, and the limits of such city shall be extended as is in said judgment specified."

In each case it was held, following the decision in *Callen v. Junction City*, supra, that the power conferred on the court was judicial, not legislative.

Among other cases which also follow the Junction City case are *City of Emporia v. Randolph* 56 Kan. 117, 42 Pac. 376, and *Eskridge v. Emporia*, 63 id. 368, 65

Pac. 694, although in the former case Mr. Justice Allen dissented, and Chief Justice Martin, who wrote the opinion, stated that if the question had been a new one he would have taken the other view.

It should be observed that all of these cases are based upon statutes authorizing changes of boundary to be made by the mayor and council, subject to certain findings made by the court. But the statute involved in the present action is very different. So far as it is here material it reads as follows (Gen. Stat. 1901, §§ 7896, 7897, 7899, 7900) :

"§ 7896. Whenever it shall be desired to vacate any block, lot, park, reservation, street or alley, or any part of such block, park, reservation, street or alley, in any improved town site, or exclude the same, or any unplatted farm land from the boundaries of any city of the first, second, or third classes, the person, persons or corporation so desiring shall give notice by advertisement for four consecutive weeks in a weekly newspaper of general circulation in said town, and published in the county in which said lots, blocks and parks are situated, that at the next regular session of the district court of the county in which such town is located a petition will be presented to the said district court praying the vacation of such block, lot, park, reservation, street, alley, or any part of such block, park, street or alley, and the exclusion of unplatted farm land from such corporate boundaries, describing the same properly.

§ 7897. Upon the presentation of such petition the court shall hear such testimony as is produced before it, and such other testimony as it may wish to hear; and if upon the hearing of such testimony the court is satisfied that due notice has been given as required by this act, and that no public or private right will be injured or endangered, it shall order such street, alley, or other public reservation, or any portion or portions thereof, describing the same, to be vacated, or such corporate boundaries to be changed by the ex-

clusion of such lands therefrom, by an order entered upon the journal of such proceedings. . . . And in case of an order changing such city boundaries, shall certify the same to the mayor and council of such cities, who shall thereupon, by proper ordinance record such change.''

"§ 7899. Any party to any proceeding herein shall have the right to have any matters of fact in controversy in said proceedings submitted to the determination of a jury in the district court of the county where the property is situate.

"§ 7900. That the terms 'public loss . or inconvenience,' or 'public right,' shall not be construed to extend to the taxes which may be levied upon the land vacated or excluded.''·

It will be seen that the power to determine whether the land involved shall be taken out of the city, unless it may be said to be conferred upon the court, is not conferred upon the council or any public body or officer, but upon the petitioners, who are not in terms required even to be residents upon, or owners of, the tracts affected. But under the reasoning of the cases already referred to the court is not given, nor could it lawfully be given, the power to change the corporate boundaries. The only matters left to its determination (or to that of a jury, if any party so desire) are the questions whether due notice has been given and whether any private or public right will be injured or endangered by the proposed change.

This statute was first before the court in *Brook v. Blue Mound*, 61 Kan. 184, 59 Pac. 273, but the only attack then made upon its validity related to the title, which was held sufficient. It was again considered in *In re Robinson*, 62 Kan. 426, 63 Pac. 426, where it was held that the findings of the jury were binding on the court, and that a petition under the act cannot be denied on account of the rights of holders of city

bonds being endangered by granting it, or on account
of loss of taxes to the city.   No other question was
discussed in the opinion, which criticized the meager
presentation of the law made by counsel on both
sides.    In *City of Winfield v. Lynn*, 57 Pac. 549 (not
officially reported), the constitutionality of the statute
was again affirmed by this court, but without ex-
tended discussion, and upon the assumption that
it was within the doctrine of *Callen v. Junction City*,
supra.

The precise question here involved, therefore, seems
not to have been considered in any of the cases cited.
It is this : Is it competent for the legislature to au-
thorize an individual to effect a change in the bounda-
ries of a city, provided that, after publishing notice of
his intention to do so, he can induce a jury in the
district court to find that. no public or private right
will be endangered, the loss of taxes to the city and
of security to its bondholders being excluded from
consideration?  In the cases arising under the stat-
utes authorizing the mayor and council to change the
city boundaries, subject to conditions to be deter-
mined by the court, the doubtful question was whether
a legislative power was thereby conferred upon the
court, since it was authorized to pass upon the expe-
diency of the proposed measure.   But here there is
no such. question.   Under the statute now involved
the court has no discretion ; it examines but one
question — whether the proposed change would injure
or endanger public or private rights, leaving out of
consideration any possible right of the city or its
bondholders to look to the property affected for taxes,
and if this is answered in the negative it must register
the will of the petitioner, just as the council is in ex-
press terms required to record it by ordinance.   The

legislative power is not devolved upon the court, but upon the individuals seeking the change.

In *Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148, 34 Pac. 416, a statute requiring the improvement of a public road to be made when petitioned for by a certain number of individuals was held void on the ground that it sought to vest legislative powers in the petitioners. While Mr. Justice Johnston dissented, the dissent was based upon the grounds that the stat-. ute really left to the county commissioners the final decision as to whether the improvement should be made, a construction not accepted in the majority opinion, and that the petitioners exercised no legislative power. We think the principle of that case reaches the facts of this, and are constrained to hold that for the reason indicated the act of 1897 is unconstitutional, so far as it attempts to authorize territory to be taken from the city upon the petition of individuals, subject only to the findings of fact for which it provides.

If the statute had prescribed affirmative conditions upon which owners might have their lands disconnected from the city as a matter of right, the existence of the conditions to be passed upon by the court, a very different question would be presented. For instance, if its provisions were that any unplatted farm land lying in a city should be excluded from the corporate boundaries on petition of the owner whenever its character as such should be shown in appropriate proceedings in the district court, it might be considered that the legislature had itself determined that such land ought not to be included within the limits of a city because of its character, and so, in effect, made its retention unlawful, and afforded means by which the owner might procure an authori-

tative declaration to that effect, the judicial determination merely establishing that the legislative enactment applied to his property. But such is not the effect of the statute, although some of its language might so indicate. The affirmative provisions are that "whenever it shall be desired to vacate any block, lot, park, reservation, street or alley, or any part of such block, park, reservation street, or alley, in any improved town site, or exclude the same, *or* any unplatted farm land from the boundaries of any city," a petition shall be presented and notice given, and if certain findings are made the court shall order the "corporate boundaries to be changed by the exclusion of such lands therefrom." In the present case the property in question is shown to be farm land, but this is not material, since the statute does not make it so; and in view of this fact the reasoning suggested as applicable under a different statute—a statute making the change of boundary dependent upon the character of the property affected —cannot be applied here.

True, the present act provides for detaching only tracts as to which a finding shall be made which is in form affirmative—that the change will not endanger rights other than those relating to taxes. But this attribute is essentially negative. It does not serve to distinguish one tract from another. It could probably be applied to most city property. Perhaps only in very exceptional cases could it be said that it makes any difference to the public or to individuals whether a particular tract is in or out of a city, apart from the consideration that property so situated as to share in the benefits of city government ought also to share in its expenses. It cannot be conceived that the legislature intended by this act to exclude

from the corporate limits of all the cities in the state all tracts of land of which it cannot be said that some public or private right other than those relating to taxation depends upon their retention. Under the provisions of the act the will that the corporate boundaries shall be changed proceeds not from the legislature or from the council, but from the signers of the petition, who are under no official responsibility, and of whom no other qualification is required than that they desire the change. These provisions are therefore void.

The judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.

SMITH, CUNNINGHAM, GREENE, BURCH, JJ., concurring.

JOHNSTON, C. J., dissenting.