No. 26,305.

In re Appeal of FANNIE RULAND, JOSEPH TAYLOR et al., *Appellants*, v. THE CITY OF AUGUSTA, *Appellee*.

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW — *Delegation of Legislative Authority — Municipal Limits*. The general question of the advisability of enlarging the territorial limits of a municipal corporation is a legislative question which, under our constitution, cannot be delegated to the courts.

2. SAME—*Delegation of Legislative Authority to Judiciary*. R. S. 12-501, 12-502, in so far as· they attempt to confer upon the district court, or judge thereof, authority to entertain a petition to increase the corporate limits of a city by adding unplatted territory thereto, to determine the advisability of the proposed territorial increase, and to make .orders in relation thereto, are void, as an attempt to confer legislative functions upon the judiciary.

Appeal from Butler district court; GEORGE J. BENSON, judge. Opinion filed January 9, 1926. Reversed.

*Earl Blake, W. A. Blake, H. L. Blake*, all of Wichita, and *M. A. Merten*, of Augusta, for the appellants.

*Stanley Taylor*, of El Dorado, *N. A. Yeager* and *R. A. Cox*, both of Augusta, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This case involves the validity of R. S. 12-501, 12-502, in so far as they attempt to confer upon the district court, or judge thereof, the power to hear and pass upon a petition to enlarge .the corporate limits of a city by adding unplatted territory thereto. The statutes in question read as follows:.

"Whenever any city desires to enlarge the limits· thereof from territory adjacent thereto, the governing body of· such city shall in the name of the city present a petition to the district court of the county in which said city is situated, or the judge thereof, setting forth by metes and bounds the territory sought to be so added and praying that such territory may be added thereto. (R. S. 12-501.)

."Notice of the time. and place of said hearing, together with a description of the property sought to be added to said city, and the names of the owners thereof so far as the same can be ascertained from the records of said county shall be published for three consecutive weeks in some newspaper of general circulation in said city. On the day set the said court or judge shall proceed to hear testimony as to the advisability of making such addition, and upon

Constitutional Law, 12 C. J. p. 856 n. 72; 6 R. C. L. 168. Municipal Corporations, 28 Cyc. pp. 134 n. 34, 137 n. 72, 183 n. 34, 185 n. 44, 199 n. 27; Statutes, 36 Cyc. p. 1001 n. 24.

Ruland v. City of Augusta.

such hearing if it or he shall be satisfied that the adding of such territory to the city will be to its interest and will cause no manifest injury to the persons owning real estate in the territory sought to be added, it or he shall make an order declaring said territory a part of the corporate limits thereof and subject to the laws and ordinances pertaining thereto, and such city may thereupon by ordinance enlarge the limits thereof to include the territory so added: *Provided,* That no such proceeding shall be necessary when the territory sought to be added is subdivided into lots and blocks, but in such cases the city shall have power to add such territory to the city by ordinance. The court or judge may for good cause shown continue such hearing beyond the time specified in the notice without further publication. Application for adding separate parcels of territory to said city may be made in the same petition, and upon such application the court or judge may order any or all of such parcels added thereto. The decision of such court or judge shall be spread at length upon the journal of the district court of said county, and a certified copy thereof recorded in the office of the register of deeds of such county." (R. S. 12-502.)

The question arises in this way: On November 14, 1924, the city of Augusta, a city of the second class, filed in the district court a petition in which it alleged "that by resolution, duly adopted, passed and approved by the mayor and councilmen of the said city, that the said city was directed to file its petition in said court to make a finding as to the advisability of enlarging the limits of said city from territory thereto, and for an order and decree that the following-described territory be added to the said city." (Here followed a description of the property by separate tracts.)

"Wherefore, the city of Augusta, Butler county, Kansas, prays the court that on the hearing of this petition that the said court shall find it advisable to make such addition; and that the tracts of land hereinbefore described by metes and bounds be added to the said city; and that an order be made declaring that such territory is a part of the corporate limits thereof, subject to the laws and ordinances pertaining to the city of Augusta; and authorizing and directing such city, by its mayor and councilmen, to pass an ordinance to enlarge the limits of said city to include the parcels and tracts of land above described."

Notice as provided by the statute was given. The owners of the respective tracts of land sought thus to be added to the city filed answers in which they attacked the validity of the statute above quoted, for the reason that it attempts to confer legislative power upon the district court, or the judge thereof; also for other reasons not necessary here to be considered. At the hearing the question was further raised by objections to the jurisdiction of the court and the introduction of evidence. The court overruled the objections,

denied the property owners' contention as to the invalidity of the statute, found that the application of the peitioner should be allowed in part and denied in part, and further found "that the adding of such territory, hereinafter described, will be to the interests of the petitioner herein and will cause no manifest injury to the persons owning real estate in the territory so to be added," and adjudged and decreed "that the real estate hereinafter described, being a portion of the property described in petitioner's petition filed herein, be, and the same is hereby added to and declared to be a part of the corporate limits of the city of Augusta, Kan., and subject to the laws and ordinances pertaining thereto, and that said city may by ordinance enlarge the limits thereof to include the territory so added, being the following-described real estate," giving the descriptions.

The answering property owners affected by the judgment have appealed, contending that the statutes above quoted are invalid. It may help us better to understand and determine the question before us to go back as far as 1872 in the history of the law of this state pertaining to the extension of corporate limits of cities of the second class, and to trace its development since that time. The statute then enacted reads:

"The city council, in their discretion, may add from the territory adjacent to the city limits, as defined and existing at the date of the approval of this act, such additional territory as they may deem proper, and shall in every case have power to increase or diminish the city limits in such manner as in their judgment and discretion may redound to the benefit of the city: *Provided,* That in no case shall any adjacent territory, except when subdivided into town lots, be added to the limits of a city without the consent, in writing, of the owners of a majority of the whole number of acres owned by residents of Kansas of the territory proposed to be added." (Laws of 1872, ch. 100, §133.)

This was modified (Laws of 1875, ch. 73) as to cities of more than 6,000 inhabitants by requiring notice to be given that the city was about to pass an ordinance increasing its boundaries and giving an opportunity for property owners interested to be heard before the ordinance was passed.

Evidently deeming it to be unfair to property owners in some instances to have the entire matter determined by the mayor and city council, the legislature, in 1885, attempted to give some of the power pertaining to such matter to the judge of the district court, and enacted the following statute:

"That whenever the city council of any city of the second class desire to en-

large the limits thereof from the territory adjacent thereto, said council shall, in the name of said city, present a petition to the judge of the district court of the county in which said city is situated, setting forth by metes and bounds the territory sought to be so added, and praying that such territory may be added thereto. Upon such petition being presented to said judge, with proof that notice as to the time and place said petition shall be so presented has been published for three consecutive weeks in some newspaper published in said city, he shall proceed to hear testimony as to the advisability of making such addition, and upon such hearing, if he shall be satisfied that the adding of such territory to the city will be to its interests, and will cause no manifest injury to the persons owning real estate in the territory sought to be added, he shall make an order declaring said territory a part of the corporate limits thereof, and subject to the laws and ordinances pertaining thereto: *Provided,* That no such proceedings shall be necessary when the territory sought to be added is subdivided into lots and blocks, but in such cases the city council of said city shall have power to add such territory to said city by ordinance." (Laws of 1885, ch. 97, §1.)

A separate section of the statute provided that an aggrieved party might appeal from the order of such judge to the district court. Almost immediately the validity of this statute was seriously questioned because of its attempt to confer legislative power upon the district judge, and by appeal to the district court, and in the special session of the legislature of the next year that statute was repealed and the following enacted:

"That whenever the city council of any city of the second class desire to enlarge the limits thereof from the territory adjacent thereto, said council shall, in the name of said city, present a petition to the judge of the district court of the county in which such city is situated, setting forth by metes and bounds the territory sought to be added, and asking said judge to make a finding as to the advisability of adding said territory to said city. Upon such petition being presented to said judge, with proof that notice of the time and place said petition shall be so presented has been published for three consecutive weeks in some newspaper published in said city, he shall proceed to hear testimony as to the advisability of making such addition; and upon such hearing, if he shall be satisfied that the adding of such territory to the city will be to its interests, and will cause no manifest injury to the persons owning real estate in the territory sought to be so added, he shall so find; and thereupon the city council of said city may add such territory to said city by an ordinance providing for the same: *Providing,* That no such proceeding shall be necessary where the territory sought to be added is subdivided into lots and blocks, but in such cases the city council of such city shall have power to add such adjacent territory to said city by ordinance." (Laws of 1886, ch. 69, §1.)

This statute provoked much criticism among the members of the bench and bar of the state and gave rise to considerable litigation.

The first case involving the statute was *Steele v. City of Newton*, 41 Kan. 512, 21 Pac. 644. In May, 1886, the city filed its petition before the judge of the district court to annex certain unplatted territory to the city. The property owner Steele answered, and there was a hearing before the judge at chambers, who made findings as provided by the statute of 1886, but did not make any order or enter any judgment. Steele appealed to the district court, where all the proceedings had before the district judge were adopted as and for the proceedings in district court. Steel then appealed to this court. It was held that the findings of the district judge approved by the district court did not amount to a judgment, and hence was not an appealable order. In *City of Emporia v. Smith*, 42 Kan. 433, 22 Pac. 616, the territory sought to be annexed to the city had been platted by the owner, hence the particular part of the statute now being considered was not before the court. In *Callen v. Junction City*, 43 Kan. 627, 23 Pac. 652, the action was brought to restrain the city from laying out and opening streets through the land of the plaintiff. The land consisted of a twenty-eight-acre tract which had previously been taken into the city by an ordinance passed by the city after the hearing of a petition presented to the judge of the district court, who had made a finding that the proposed annexation of the tract was to the interest of the city and would result in no manifest injury to the owners of the land. These matters are all recited in the ordinance, which was pleaded as a defense. The statute was questioned by plaintiff as being unconstitutional in attempting to delegate legislative power to the judiciary. After stating the question and how it was raised the court said:

"It being a question of doubt, therefore, it should be resolved against the plaintiff in error, as it is a well-settled rule that the action of the law-making power must in all cases be applied, unless it is manifestly in contravention of the constitution." (p. 632.)

The court further said:

"Our own view can be expressed in a few sentences: The power to create and regulate municipal corporations, define, extend or limit their boundaries, and commit to them certain subjects for local regulation, is the exercise of a purely legislative authority. An organic command requires this legislation to be applicable to classes, and not special as to each municipality. A general law is passed authorizing cities of the second class to extend their boundaries so as to include adjacent territory, on certain conditions, or depending on certain facts. The existence of these conditions, or of these facts, is made the subject of judicial inquiry and determination, and this is done to protect the property interests of the landowners, and not to commit the whole control

to a city council whose interests in the city might induce arbitrary action against the landowner. In other words, the judge says in each case whether or not the conditions authorizing the absorption by the city exists as to this particular piece of land. The legislature can confer on the city council power to make a local regulation, and this necessarily involves discretion as to what it shall be; but the question as to whether that discretion has been exercised within the limitations of the power delegated, is a judicial question pure and simple, and nothing else." (p. 632.)

This case was followed and held controlling in *Huling v. City of Topeka,* 44 Kan. 577, 24 Pac. 1110; *Hurla v. Kansas City,* 46 Kan. 738; 27 Pac. 143; *City of Winfield v. Lynn,* 60 Kan. 859, 57 Pac. 549; *Eskridge v. Emporia,* 63 Kan. 368, 65 Pac. 694.

There has never been any question as to the judicial soundness of the opinion in *Callen v. City of Junction City,* supra, in so far as it held "The power to create  . . .  municipal corporations, define, extend or limit their boundaries  . . .  is the exercise of a purely legislative authority." But the part of the opinion holding that the review by the court of the discretion vested in the city as to the prudence, propriety, or advisability of annexing specific territory to the city was a judicial question pure and simple, has been the subject of much criticism. (*In re Incorporation of Village of North Milwaukee,* 93 Wis. 616; *Glaspell v. Jamestown,* 11 N. D. 86.) Notwithstanding the previous decisions of this court on that question there was still so much question as to whether that holding was correct that a judge of one of the district courts of this state refused to consider a petition presented to him by a city seeking to extend its boundaries, and a proceeding in mandamus was brought in this court to compel him to do so. (*City of Emporia v. Randolph,* 56 Kan. 117, 42 Pac. 376.) In the opinion by Mr. Chief Justice Martin, it was said:

"If this question were a new one, the writer would entirely concur in the view expressed by the district judge; but it was fully considered in the case of *Callen v. Junction City,* 43 Kan. 627, where the court held, although unnecessary to a decision, that the findings of fact made by a judge of the district court, as required by this section, are the exercise of judicial power. That case has been followed in other cases, in one at least where a consideration of questions closely analogous was necessary in arriving at a proper conclusion. (*Huling v. City of Topeka,* 44 Kan. 577, 579, 580; *Hurla v. Kansas City,* 46 id. 738, 744, 745.) We think it best to follow these authorities, notwithstanding we cannot assent to the reasoning upon which they are founded." (p. 118.)

And there was a dissenting opinion by Mr. Justice Allen, in which it was said:

"I cannot conceive of an act more clearly and distinctively legislative in its character than that of determining what the political *status* of a district shall be." (p. 119.)

Concerning these decisions it is said in *Town of Fairbanks, Alaska, v. Barrack,* 282 Fed. 417, a case involving a statute of the territory of Alaska pertaining to extending the limits of municipal corporations:

"The better reasoning is that the creation of municipalities, and the defining of the extent of the boundaries thereof, involve the exercise of legislative, not judicial, power. (Citing authorities.) Some earlier cases held otherwise, as *Callen v. Junction City,* 43 Kan. 627, but their reasoning is far from convincing, and in *City of Emporia v. Randolph,* 56 Kan. 117, the supreme court of Kansas disapproved of the former decision, with emphatic declarations that a judge who passes upon a petition to extend the corporate limits of a city acts not in a judicial, but in a legislative, capacity." (p. 420.)

But the real overthrow of the objectionable doctrine in *Callen v. Junction City,* supra, by this court was made in *Hutchinson v. Leimback,* 68 Kan. 37, 74 Pac. 598. That case involved the validity of a statute for excluding territory from a city, and it was clearly held that the expediency of a proposed change in the corporate limits of a municipal corporation was a legislative question, and not a judicial one. The statute in question in that case was held void, because it conferred that discretionary power upon the petitioning landowners who sought to have their property excluded from the corporate limits. This case was decided in December, 1903. The very next session of our legislature changed the questionable statute of 1886 so as to read as follows:

"That whenever the city council of any city of the second or third class desire to enlarge the limits thereof from the territory adjacent thereto, said council shall, in the name of said city, present a petition to the board of county commissioners of the county in which such city is situated, setting forth by metes and bounds the territory sought to be added, and asking said board of county commissioners to make a finding as to the advisability of adding said territory to said city. Upon such petition being presented to said board of county commissioners, with proof that notice of the time and place said petition shall be so presented has been published for three consecutive weeks in some newspaper published and of general circulation in said city, they shall proceed to hear testimony as to the advisability of making such addition; and upon such hearing, if they shall be satisfied that the adding of such territory to the city will be to its interest, and will cause no manifest injury to the persons owning real estate in the territory sought to be added, they shall so find; and thereupon the city council of said city may add such territory to said city by an ordinance providing for the same: *Providing,* That no such proceeding shall be necessary where the territory sought to be added is sub-

Ruland v. City of Augusta.

divided into lots and blocks, but in such cases the city council of such city shall have power to add such adjacent territory to said city by ordinance: *And further provided,* No unplatted territory of over five acres shall be taken into said city against the protest of the owner thereof, unless the same is circumscribed by platted territory that is taken into said city." (Laws of 1905, ch. 118, § 1.)

It will be noted this statute made the board of county commissioners, instead of the district judge or court, the body to pass upon the advisability of extending the corporate limits of the city. This continued to be the statute governing the matter until the legislature of 1923 passed an act (Laws 1923, ch. 144), including the statutes here in question (R. S. 12-501; 12-502). This is the first case arising under the statute last mentioned to be presented to this court. Shall we uphold this statute under the doctrine that a legislative enactment must be upheld unless clearly void, as was done for the statute of 1886 in *Callen v. Junction City,* supra, and have the soundness of our decision questioned by the bench and bar and criticized by other courts, finally to have the law as announced by our decision abandoned both by this court and our legislature, as was done with the objectionable holding in *Callen v. Junction City;* or shall we now decide this case in harmony with our constitution and with the great weight of authority and hold that the question of the advisability of a change of boundaries of a municipal corporation is a legislative question which cannot be delegated to the courts? The latter course seems the sound one to take.

Our constitution provides: "The executive department shall consist of a governor, lieutenant governor, secretary of state, auditor, treasurer, attorney-general and superintendent of public instruction," etc. (Art. 1, § 1.) "The legislative power of this state shall be vested in a house of representatives and senate." (Art. 2, § 1.) "The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts inferior to the supreme court as may be provided by law," etc. (Art. 3, § 1.)

Commenting on these provisions, in *Western Union Tel. Co. v. Myatt,* 98 Fed. 335, 347, it was said:

"That, in a broad sense, the powers of one of these departments shall not be conferred upon either of the others, is not only within the true spirit of these provisions, but also substantially within the letter thereof; and the addition thereto of an express prohibitory declaration, such as is contained in the constitutions of some of the states, that the powers of one department

shall not be exercised by another, would add very little to their effect, so far as concerns the question under consideration. The universal doctrine of American liberty under written constitutions requires the distribution of all the powers of government among three departments—legislative, judicial, and executive—and that each, within its appropriate sphere, be supreme, coordinate with, and independent of, both the others. This doctrine was adopted into the constitution of one state with the declaration that it was 'to the end it may be a government of laws, and not of men.'"

Our constitution further provides: "The legislature shall pass no special act conferring corporate power." (Art. 12, § 1.) And "Provision shall be made by general law for the organization of cities, towns and villages." (Art. 12, § 5.)

Without quoting at length from the authorities, the correct legal principles deducible from them governing the territorial boundaries of municipal corporations may be thus stated: (1) The power to create municipal corporations, including the power to designate their boundaries and to increase or to decrease their corporate limits, is purely legislative—it is not a part of either the executive or judicial branch of the government. In the absence of constitutional restrictions the legislature may exercise this power at will, as was frequently done in our territory prior to the adoption of our constitution. (2) Under a constitution such as ours that legislative power must be exercised by a general law. (3) In so far as such general law requires the exercise of the discretion of some one in order to affect the creation of a municipal corporation, or the increase or decrease of its territorial limits, such general law must vest such discretion in some board or tribunal having legislative functions— such as the board of county commissioners. (Const., art. 2, § 21.) (4) But, in so far as such general law makes the organization of municipal corporations, or the change of their territorial limits, to depend upon specific questions of fact—such as the number of inhabitants, the amount of taxable property, the consent of a specific portion of the inhabitants, or electors, or taxpayers of the area affected—the trial of the questions whether such required facts exist, and the making of findings as to whether they do or do not exist, and rendering judgment thereon, is a judicial function properly referred to and determined by the courts. (Dillon on Municipal Corporations [5th ed.], §§ 55, 62, 353, 355, 356; Cooley on Municipal Corporations, pp. 29, 31, 32, 98, 100; 28 Cyc. 134, 135, 187; 12 C. J. 856; 19 R. C. L. 700, 701; *Lyon v. City of Fayette*, 38

Ruland v. City of Augusta.

Idaho, 705; *Town of Fairbanks, Alaska, v. Barrack*, 282 Fed. 417 [certiorari was denied, 261 U. S. 615]; *Forsyth v. City of Hammond*, 71 Fed. 443 [reversed on other grounds, 166 U. S. 506]; *Glaspell v. City of Jamestown*, 11 N. D. 86; *In re Incorporation of Village of North Milwaukee*, 93 Wis. 616; *Brenke v. Borough of Belle Plaine*, 105 Minn. 84; *The City of Galesburg v. Hawkinson et al.*, 75 Ill. 152; doctrine adhered to in *North v. Board of Education*, 313 Ill. 422; *The State of Kansas v. Young and others*, 3 Kan. 445; *Hutchinson v. Leimbach*, 68 Kan. 37, 74 Pac. 598; *Nash v. Glen Elder*, 74 Kan. 756, 88 Pac. 62, 81 Kan. 446, 106 Pac. 292; *Bolmar v. Shawnee County*, 109 Kan. 91, 197 Pac. 880.)

The case of *Town of Olsburg v. Pottawatomie County*, 113 Kan. 501, 215 Pac. 451, well illustrates the difference between legislative and judicial functions in the matter of organizing, or changing the boundaries of municipal corporations. That case involved the proceedings before the board of county commissioners for organizing a city. The statute required the board of county commissioners to find, before the city could be organized, four things: (1) The number of inhabitants in the territory proposed to be incorporated; (2) that the petition for incorporation was signed by a majority of the electors; (3) and by a majority of the taxpayers; and (4) that the prayer of the petitioners is reasonable. The first three of these were held to be questions upon which a court could take evidence and determine the facts, and hence to be judicial questions. But the question whether the prayer of the petition is reasonable was held to be a legislative question over which the court has no jurisdiction. Such a question is really one of statecraft and involves in a broad way all the political questions of general welfare incident to legislative action.

In the statute before us there are no specific questions of fact capable of being averred in issuable form upon which a court could hear evidence and reach a conclusion in which he would be guided by the statute, such as density of population, assessed value, or the wish of the inhabitants or taxpayers. By this statute the court is asked "to hear testimony as to the advisability of making such addition." Naturally such testimony, having no specific fact to which it is required to relate, would vary with various witnesses, depending upon their respective ideas as to government, statecraft, politics, religion, education and social and financial matters, and

might be influenced by personal or selfish motives. The statute further provides, if the court "shall be satisfied that the adding of such territory to the city will be to its interest and will cause no manifest injury to the persons owning real estate in the territory sought to be added," an order shall be made, etc. Obviously, no force is added by stating this in the affirmative as to the city and in the negative as to the property owner, for in determining whether the proposed action is to the interest of the city the court must consider whether such action would be to its detriment; and in determining whether such action will cause no manifest injury to the owners of real estate the court must consider whether it is beneficial to them, and all this is included in the question whether the proposed action is advisable, which, as we have seen, is a purely legislative question.

From what has been said it necessarily follows that R. S. 12-501 and 12-502, in so far as they attempt to provide a procedure for adding unplatted land to the corporate limits of a city, are void in that they attempt to confer legislative functions upon the court.

The judgment of the court will be reversed, with directions to sustain the objections made by the property owners to the jurisdiction of the court.