No. 27,385.

THE STATE OF KANSAS, ex rel. S. S. SPENCER, County Attorney of
Lyon County, *Appellee,* v. DRAINAGE DISTRICT No. 1 in Lyon
County, *Appellant.*

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW — *Delegating Legislative Powers — Incorporation of
   Drainage Districts.* R. S. 24-601 is not unconstitutional on the ground that
   it delegates legislative powers to the signers of articles for the incorpora-
   tion of a drainage district.

2. SAME — *Delegating Legislative Powers — Protesting Organization of Drain-
   age Districts.* R. S. 24-603 is not unconstitutional on the ground that it
   delegates legislative powers to the district court.

Appeal from Lyon district court; ISAAC T. RICHARDSON, judge. Opinion
filed March 12, 1927. Reversed.

*Lon C. McCarty,* of Emporia, *Justin D. Bowersock, Robert B. Fizzell* and
*John F. Rhodes,* all of Kansas City, Mo., for the appellant.

*O. R. Stites,* county attorney, *Gilbert H. Frith* and *O. L. Isaacs,* both of
Emporia, for the appellee; *S. S. Spencer, W. L. Huggins, O. T. Atherton, W.
C. Harris, O. S. Samuel* and *W. S. Kretsinger,* all of Emporia, of counsel.

*Chester I. Long, Austin M. Cowan, Claude I. Depew, Thomas E. Elcock,
James G. Martin* and *Harold H. Malone,* all of Wichita, as *amici curiæ.*

The opinion of the court was delivered by

HARVEY, J.:   This is a quo warranto proceeding, which questions
the corporate existence of drainage district No. 1 of Lyon county.
The drainage district was organized, and is attempting to function
under R. S. 24-601 to 24-640.   The trial court held R. S. 24-601 to
be void for the reason that it confers upon the petitioners legisla-
tive powers, and held R. S. 24-603 to be void for the reason that it
confers legislative powers upon the district court.   Judgment was
rendered for plaintiff.   Defendant has appealed.   The sole question
before us is the validity, under our constitution, of these statutes.

Our constitution separates, as much as it is possible or practi-
cable to do so, the executive (art. 1, § 1), legislative (art. 2, § 1),
and the judicial (art. 3, § 1) powers of our government.   It further
provides that the legislature shall pass no special act conferring
corporate powers (art. 12, § 1), and that provisions shall be made
by general law for the organization of cities, towns and villages
(art. 12, § 5).   While drainage districts are not mentioned in our

Constitutional Law, 12 C. J. pp. 790 n. 2, 797 n. 35, 799 n. 66.   Drains, 19 C. J.
pp. 614 n. 72, 615 n. 75, 77.

constitution, it has been held that a drainage district is properly classified as a quasi-municipal corporation. (*Roby v. Drainage District*, 77 Kan. 754, 759, 95 Pac. 399; *State, ex rel., v. Drainage District*, 102 Kan. 575, 171 Pac. 634.) It was said, in *Jefferson County v. Drainage District*, 97 Kan. 302, 303, 155 Pac. 54, and later quoted with approval in *Euler v. Rossville Drainage District*, 118 Kan. 363, 365, 235 Pac. 95:

"The drainage district, like the county, is a quasi-public corporation, an arm of the state, created by the legislature to perform a function of government. It derives its authority to exist from the same source as does the county. Both were created by and exist at the pleasure of the legislature."

Our court has uniformly held that the power to create municipal corporations or quasi-public corporations—subdivisions of the state for some governmental purpose—is a legislative power and its exercise a legislative function. This was the unobjectionable doctrine announced in *Callen v. Junction City*, 43 Kan. 627, 23 Pac. 652, and consistently adhered to. (*Ruland v. City of Augusta*, 120 Kan. 42, 242 Pac. 456, and cases there cited.)

With these legal propositions in mind, let us examine the specific questions before us. Is the statute (R. S. 24-601, *et seq.*) void for the reason that it delegates legislative powers to the petitioners? It may be well for us to examine previous decisions of this court as to the validity, for this reason, of similar statutes.

In *Comm'rs of Wyandotte Co. v. Abbott*, 52 Kan. 148, 34 Pac. 416, chapter 214, of the Laws of 1887, which provides that whenever a majority of the resident landowners within one-half mile on either side along the line of any regularly laid out road within the terminal points mentioned in the petition, shall petition the board of county commissioners of any county in this state for the improvement of any road as located, or any part thereof, it is made the duty of such county commissioners to cause the same to be improved as hereinafter provided, was held void, for the reason that the petitioners named in the statute are authorized, absolutely and arbitrarily, to determine whether the improvement is necessary and shall be made. No discretion, exercise of judgment, or advisory or supervisory control, is vested in the board of county commissioners, or any other tribunal or officers elected by or responsible to the people.

In *Hutchinson v. Leimbach*, 68 Kan. 37, 74 Pac. 598, chapter 267, of the Laws of 1897 was held unconstitutional, in that it attempts to

confer a legislative power upon petitioners who own land within corporate limits, to have it excluded therefrom. It was said:

"Under the statute now involved the court has no discretion; it examines but one question—whether the proposed change would injure or endanger public or private rights, leaving out of consideration any possible right of the city or its bondholders to look to the property affected for taxes, and if this is answered in the negative it must register the will of the petitioner, just as the council is in express terms required to record it by ordinance. The legislative power is not devolved upon the court, but upon the individuals seeking the change." (p. 43.)

And further:

"If the statute had prescribed affirmative conditions upon which owners might have their lands disconnected from the city as a matter of right, the existence of the conditions to be passed upon by the court, a very different question would be presented." (p. 44.)

In *Railway Co. v. Cambern,* 66 Kan. 365, 71 Pac. 809, chapter 104 of the Laws of 1893, relating to the construction of levees, was held not to be unconstitutional on the ground that it delegates legislative power to the petitioner. The statute authorized the board of county commissioners to cause the construction of the levee "if it finds that the cost thereof will not be too burdensome upon the persons to be directly benefited." This was held to sufficiently imply that the commissioners are to weigh the public benefits of the improvements in a comparison with this cost, and that the final determination as to the necessity of the work is made by the commissioners.

In *State v. Butler County,* 77 Kan. 527, chapter 141 of the Laws of 1907 was held not unconstitutional on the ground that it delegates legislative power to the petitioners. It was said the law existed before the petition was presented.

"The petition was not necessary to make the law. It was only necessary to give the board authority to act under the law." (p. 530.)

It was argued that the commissioners had no discretion as to the building of the courthouse if enough taxpayers petitioned. This was held to be a strained construction of the statute—that its proper construction was that the board must determine the necessity and cost of the building.

In *Hill v. Johnson County,* 82 Kan. 813, 109 Pac. 163, chapter 201 of the Laws of 1909 was held not unconstitutional on the ground that it delegates legislative power to the petitioners. The statute

provided that before the improvements should be ordered by the board, and before any tax could be imposed, the board should first make an order finding and declaring the road to be a public utility. It was said:

"The law does not delegate to the petitioners the power to order or direct that anything be done. They do not arbitrarily fix or form a taxing district, nor do they arbitrarily determine the kind, character, or extent of the improvement or the cost thereof, or of the time when the special assessments are to be paid. These are all done by the board. Nothing that the petitioners do can be regarded as the exercise of legislative power. They merely initiate the proceedings." (p. 818.)

In *Railroad Co. v. Leavenworth County,* 89 Kan. 72, 130 Pac. 855, it was held that the drainage act (Laws 1905, ch. 215), does not conflict with the constitution by delegating, or attempting to delegate, legislative power to the petitioners who seek for the organization of a drainage district. In the opinion reference is made to *State v. Monahan,* 72 Kan. 492, 84 Pac. 130, and *Roby v. Drainage District,* 77 Kan. 754, 95 Pac. 399, and it was said:

"These cases, in effect, hold that the legislature has the power to build levees to prevent the overflow of natural watercourses and to protect land from damage resulting from overflow within particular districts; that this power may be exercised through public corporations organized for that purpose; that drainage districts provided for are creations of the legislature itself, and that such corporations are taxing districts. . . . The operation of the law does not depend on the will of the petitioners, but it is the will of the legislature which is to be put in force when the board of county commissioners find that the prescribed conditions exist within the district which the petitioners ask to have incorporated." (p. 78.)

In *State, ex rel., v. Lamont,* 105 Kan. 134, 181 Pac. 687, chapter 284 of the Laws of 1917 was held not invalid as a delegation of legislative power. This is a rural high-school district law. It was said:

"So it may be said here that the will of the petitioners does not govern, but when the provision made by the legislature is accepted by the electors themselves by the proper vote, it becomes operative. The legislature gives them permission to form themselves into such district, and when, by the proper election, they avail themselves of this permission, they are not exercising legislative power, but merely accepting a privilege conferred by a proper exercise of such power." (p. 138.)

In *State, ex rel., v. Raub,* 106 Kan. 196, 186 Pac. 989, chapter 265 of the Laws of 1917, and chapter 246 of the Laws of 1919, were held not to delegate legislative power to the petitioners for an improved road. In the opinion it was said:

"Another objection . . . is that the statute delegates to the petitioners legislative power, in this, that they fix the boundaries of the benefit district, and the type and width of the road. The statute does provide that petitioners may initiate proceedings to obtain a road, but whether or not the request shall be granted and the road petitioned for shall be improved is not for the determination of the petitioners. That discretion and power is lodged in the local legislative tribunal, the board of county commissioners." (p. 199.)

Examining our statute (R. S. 24-601 *et seq.*) in the light of the above authorities it is clear that the statute does not delegate legislative power to the petitioners. The statute is general in its nature. It applies to any place in the state where there is as much as 160 acres of wet, swamp, overflowed or submerged land. It authorizes the majority of the owners of such land to initiate a proceeding for the organization of a drainage district corporation, but whether the district shall be incorporated, or just what lands shall be included, is not finally determined by the petitioners. Those matters are determined, after notice and a hearing, by the district court.

Passing to the next question: Is the statute void for the reason that it delegates legislative power to the district court? Counsel have presented an extended argument on this question and have cited and discussed many cases from this court, from the courts of other states, and from the federal courts. We have examined and considered all that has been presented; but it will not be necessary to make a detailed analysis of the arguments and the authorities cited. We had occasion to examine this question at some length in *Ruland v. City of Augusta,* 120 Kan. 42, 242 Pac. 456. We are satisfied with the conclusion there reached. It was there said:

"Without quoting at length from the authorities, the correct legal principles deducible from them governing the territorial boundaries of municipal corporations may be thus stated: (1) The power to create municipal corporations, including the power to designate their boundaries and to increase or to decrease their corporate limits, is purely legislative—it is not a part of either the executive or judicial branch of the government. In the absence of constitutional restrictions the legislature may exercise this power at will, as was frequently done in our territory prior to the adoption of our constitution. (2) Under a constitution such as ours that legislative power must be exercised by a general law. (3) In so far as such general law requires the exercise of the discretion of some one in order to affect the creation of a municipal corporation, or the increase or decrease of its territorial limits, such general law must vest such discretion in some board or tribunal having legislative functions— such as the board of county commissioners. (Const., art. 2, § 21.) (4) But, in so far as such general law makes the organization of municipal corporations, or the change of their territorial limits, to depend upon specific ques-

tions of fact—such as the number of inhabitants, the amount of taxable property, the consent of a specific portion of the inhabitants, or electors, or taxpayers of the area affected—the trial of the questions whether such required facts exist, and the making of findings as to whether they do or do not exist, and rendering judgment thereon, is a judicial function properly referred to and determined by the courts." (p. 50.)

Regarding these legal principles as settled, let us now examine the statute. The proceeding is initiated by a majority of the owners, signing articles of association, as provided by R. S. 24-601, and filing the same in the office of the clerk of the district court, praying that they be declared a drainage district. Summons is then issued to owners of land in the district who did not sign the articles of association. (R. S. 24-602.) The statute then provides:

"All owners of real estate in said district who have not signed said articles of association and who may object to the organization of said drainage district, after having been duly summoned, shall on or before the second day of the term of court to which they have been summoned to appear, file their objection or objections in writing, if any they may have, why such drainage district should not be organized and declared a public corporation of this state, and why their land will not be benefited by drainage, and should not be embraced in the said drainage district, and liable to taxation for the draining of the same; and all such objections shall be heard by the court in a summary manner, without any unnecessary delay, and in case such objections are overruled, the district court shall, by its order duly entered of record, duly declare said drainage district a public corporation of this state. The fact that said district shall contain one hundred and sixty acres or more of wet, overflowed or submerged lands shall be sufficient cause for declaring the public utility of said improvements, and shall be sufficient grounds for declaring said organization a public corporation of this state. And in case any owner of said real estate shall satisfy the court that his real estate, or any part thereof, has been wrongfully included in said district, and will not be benefited thereby, then the court may exclude such real estate as will not be benefited and declare the remainder a district as prayed for." (R. S. 24-603.)

It should first be noted that the legislature has determined the legislative question involved by the enactment of the statute under consideration; that is, the legislature has determined that wet, swamp, overflowed or submerged land of an area of 160 acres or more shall be drained, and that public corporations shall be formed for the drainage of such land. What, then, are the questions the court is asked to pass upon? Outside of the questions relating to the regularity of the procedure, there are, in the main, two questions for the court to determine: *First*, is there a tract of wet, swamp, overflowed or submerged land of an area of 160 acres or more within

the description of the land described in the articles of association? If that is found to exist, the district should be declared organized under the legislative mandate. The statute specifically provides:

"The fact that said district shall contain one hundred and sixty acres or more of wet, overflowed or submerged lands, shall be sufficient cause for declaring the public utility of said improvements, and shall be sufficient grounds for declaring said organization a public corporation of this state." (R. S. 24-603.)

There is no reason a court cannot inquire into the facts as to whether certain lands are wet, overflowed or submerged lands. A controversy on this question can be put in issuable form. The court can take evidence upon that question and decide the question upon the evidence, as any other question of fact may be decided. This fact, when determined, alone requires the court to render a judgment directing the district to be organized.

The *second* question the court must pass upon, if it be raised by any of the landowners summoned, is whether specific tracts will be benefited by such drainage. This, likewise, as to each tract concerning which such question is raised, is a matter upon which the court can take testimony and make findings of fact. If the land is so situated, and its surface, elevation or contour such that it will be benefited by the drainage project necessary to drain the 160 acres or more of wet, swamp, overflowed or submerged land, then it should be included in the drainage district. If not, it should not be included. Speaking in a large way, these are the only essential features the court is asked to pass upon. The court may be called upon to use judicial discretion in the weighing of evidence and the passing upon of such questions, but it has nothing to do with the legislative discretion involved; that is, with the prudence or advisability of the formation of the district. The legislature has, by statute, already determined that it is advisable and prudent to organize a drainage district for the drainage of wet, swamp, overflowed or submerged land of 160 acres or more in area.

Appellee contends that the statute (R. S. 24-603) provides that the landowners summoned, who object to the organization of the drainage district, may file objections "why such drainage district should not be organized and declared a public corporation of this state, and why their land will not be benefited by drainage, and should not be embraced in the said drainage district." It is argued this provision of the statute permits these parties to present not only

the question of whether their specific lands will be benefited by the proposed drainage, but also the broader question "why such drainage district should . . . be organized and declared a public corporation of this state." And it is argued this presents the question of the prudence or advisability of the formation of such a corporation, in view of all the facts and circumstances, political, governmental or otherwise, which might be presented, or which suggest themselves; that the question really is, Will the formation of such a corporation be conducive to the public good, or public welfare— will it be a public utility? And it is contended the statute requires the district court to pass upon these questions, in a summary manner, and to sustain or overrule objections to the formation of the drainage district for these reasons. These questions are, of course, legislative rather than judicial (_Ruland v. City of Augusta,_ supra), and appellee's contention on this point would be good were it not for the fact that the statute also provides that a finding by the court that there is as much as 160 acres of wet, overflowed or submerged land within the land described alone is sufficient to authorize the court to declare the project a public utility. So, after all, the only thing essential to the organization of the drainage district is the finding of the existence of as much as 160 acres of such land. And that is, of course, a question upon which issues may be joined, evidence heard and a conclusion reached by the court, just as readily as the question of the number of inhabitants, or the value of taxable property in a proposed district.

Statutes should not be held unconstitutional unless it is clear that they conflict with constitutional provisions.

In determining the constitutionality of a statute, questioned as delegating legislative functions to courts, there can be no presumption that such was the legislative intent. The legislature is presumed to have acted within its proper sphere; to have been cognizant of the three branches of our government—the legislative, executive and judicial—and with their respective scope, power and functions, and to have enacted the statute in question with the purpose of exercising its own legislative powers to the extent necessary to carry out the purposes of the statute, and of submitting to the court only judicial functions properly within its sphere. And this presumption must be indulged and is controlling unless it is clear, from the provisions of the statute, that it does in fact attempt to delegate to the courts powers and functions purely legislative.

Our conclusion is that the statute in question is not invalid. The judgment of the court below will be reversed with directions to enter judgment for defendant.

HARVEY, J. (dissenting in part): I approve the opinion as written in all respects except the construction of R. S. 24-603. In my judgment, the construction given that section is erroneous. The provision in the statute, "The fact that said district shall contain one hundred and sixty acres or more of wet, overflowed or submerged lands shall be sufficient cause for declaring the public utility of said improvements, and shall be sufficient grounds for declaring said organization a public corporation of this state," is a permissive provision, not an imperative one. It authorizes the court to declare the public utility of the project, but does not require such declaration. The court is still under the duty of considering "why such drainage district should [or should not] be organized" in its broadest sense, including political or governmental questions; and from all reasons presented, argued and considered, the court, under this section, must determine whether the proposed improvement is a public utility, and whether a governmental corporation shall be created to foster and promote the public good designed to be accomplished. This is, of course, a purely legislative question, which courts should not attempt to determine, and which, under the provisions of our constitution and the previous decisions of this court, cited in the opinion, cannot be delegated to the courts.

By the statute (R. S. 24-601 *et seq.*) the legislature, by a general act, provided generally for the formation, and functioning, of quasi-municipal corporations for the drainage of swamp and overflowed lands, but it did not attempt to organize any specific corporation for the purpose of the drainage of any specific tract or body of swamp or overflowed lands. Under this statute, before any specific corporation is created for that purpose, generally speaking, two things must be considered and determined, viz.: (1) *Specific facts:* That there is a contiguous body of swamp or overflowed lands of an area of 160 acres or more within the proposed drainage district; whether specific lands will be benefited, and whether the proceedings taken conform to the statute. These are judicial questions, may be presented in issuable form, evidence may be received thereon, and they may be considered and determined by the courts. (2) *The broad question:* Is the proposed improvement a public utility?

In short, the court is, by this statute, required to pass upon all questions presented as to "why such drainage district should (or should not) be organized and declared a public corporation of this state." Clearly this requires the consideration of every question as to the prudence, or advisability, of the organization of a municipal corporation that it is possible to present. These questions are purely legislative. Their determination cannot, under our constitution, be delegated to the courts. See *Ruland v. City of Augusta,* 120 Kan. 42, 46, 242 Pac. 456, and cases there discussed.

This objection to the statute is not answered by saying that, after all, the court is required to find the fact that said district contains 160 acres or more of wet, overflowed or submerged land. The statute says that a finding of this kind "shall be sufficient cause for declaring the public utility of said improvements, and shall be sufficient grounds for declaring said organization a public corporation of the state." This provision still leaves it optional with the court to declare the proposed improvement a public utility or not, even though the court finds that it contains 160 acres of wet, overflowed or submerged land. It might very well be that the wet, overflowed or submerged land may be so situated that it cannot be drained without an expense greater than any possible benefits that can be derived, in which event the court would not be required to declare the project a public utility. It might well be that the proposed boundaries of the district were not sufficiently extensive to make drainage possible. It will be noted that the court has no authority to enlarge the proposed district. The court may exclude specific tracts of land for either of two reasons: (*a*) Because the land will not be benefited by the drainage, or (*b*) because the land should not be included. It may be noted that the determination of the first of these is a judicial question; the determination of the second is a legislative one. If the district as proposed obviously presented an inadequate outlet for the drainage of the 160 acres or more of wet, swamp or overflowed land within the proposed district, it seems clear the district should not be formed. The proposed district in this case contains more than 18,-000 acres. Certainly the statute does not require the formation of a district of this vast area upon the finding of the court that somewhere within it is as much as 160 acres of wet, swamp or overflowed land.

I deem it not out of place to call attention to the fact that in the formation of drainage or levee districts, under other provisions of

the statute, the determination of the public policy of the organization of such of them is by the board of county commissioners. (See R. S. 24-401; 24-458; 24-463; 24-502.)  Our constitution authorizes the legislature to delegate matters of local legislation to the board of county commissioners. (Const., art. 2, § 21.)  There is no necessity, and no excuse, for attempting to delegate them to the court.